**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dennis Leo LOWDER, Defendant–**
**Appellant.**

**No. 92–6378.**

United States Court of Appeals,
Tenth Circuit.

Sept. 17, 1993.

Kerry A. Kelly, Asst. U.S. Atty. (John E. Green, U.S. Atty. and Robert G. McCampbell, Asst. U.S. Atty., appearing, on the brief), Oklahoma City, OK, for plaintiff-appellee.

John W. Coyle, III, Coyle & Henry, Oklahoma City, OK, for defendant-appellant.

Before BRORBY, BARRETT and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellant Dennis Lowder was convicted of making false statements to a financial institution, 18 U.S.C. §§ 2(b) and 1014; failing to file a corporate income tax return, 26 U.S.C. § 7203; fraud and false statement on a tax return, 26 U.S.C. § 7206(1); mail fraud, 18 U.S.C. §§ 2(b) and 1341; and money laundering, 18 U.S.C. §§ 2(b) and 1957(a). Mr. Lowder appeals on numerous grounds. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

*Background*

Dennis Lowder, a Certified Public Accountant in Oklahoma City, was involved in real estate promotional activities in the 1980s. In 1985 and 1986, Mr. Lowder borrowed several million dollars from financial institutions. He supported his loan applications with false corporate and personal financial statements. The false statements formed the basis of his bank fraud conviction.

Mr. Lowder filed for bankruptcy in 1988. He was discharged in 1989, after settling an adversarial proceeding with Chisholm Federal Savings & Loan for $100,000, in the form of a promissory note secured by a mortgage on Mr. Lowder's home.

In 1990, Mr. Lowder purchased the accounting and tax practice of a retiring CPA. He then formed Octagon Financial Corporation and solicited investments from his tax clients, many of whom were retirees and unsophisticated investors. He assured his clients that Octagon was a low-risk investment with a guaranteed 12% return. As part of the scheme, Mr. Lowder sent stock certificates and account summaries to investors through the mail. The documents contained misrepresentations which formed the basis for a mail fraud conviction.

Mr. Lowder used some of the investment proceeds to satisfy the $100,000 bankruptcy debt. He did so by purchasing a home with a personal note, and then reselling it to the Octagon Corporation for $100,000 in cash. He used the cash to pay off the bankruptcy note. He also used corporate funds to purchase vehicles for personal use. Octagon investors were not informed of the use of funds, and these transactions resulted in convictions for money laundering. Mr. Lowder was also convicted of failing to file a tax return for Octagon.

In 1991, the Oklahoma Department of Securities began investigating Octagon. Mr. Lowder agreed to make a rescission offer to Octagon investors. The recision offer, however, failed to disclose the use of Octagon funds. This led to an additional mail fraud conviction. In order to pay the rescinding investors, Mr. Lowder created two new companies in 1992 and raised additional money from new investors. He was convicted of defrauding these investors by misrepresenting the companies' business activities and the intended use of proceeds.

Mr. Lowder was sentenced to twenty-four months for filing false financial statements, twelve months for the failure to file a corporate tax return, thirty-six months for fraud and false statement on a tax return, and fifty-three months for mail fraud, money laundering and filing false tax I.D. numbers. He alleges the following points of error: (1) interest should not have been included in the loss calculation; (2) he was entitled to an acceptance of responsibility deduction; (3) the sentence enhancement for obstruction of justice by false testimony was made without specific findings by the district court; (4) separate counts of violating a court order and enhancement for vulnerable victim amounted to double counting; (5) the money laundering funds did not exceed $100,000, as found by the district court; (6) the automatic enhancement for specified unlawful activity violates due process and double jeopardy; (7) he should not have received a sentence enhancement for abuse of a position of trust; and (8) the government's rebuttal argument violated his constitutional rights.

*Discussion*

We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Hershberger,* 962 F.2d 1548 (10th Cir.1992). We accept the district court's findings of fact unless clearly erroneous, and give due deference to the court's application of the Sentencing Guidelines to the facts. 18 U.S.C. §§ 3742(d)(2) & (e); *United States v. Powell,* 982 F.2d 1422, 1435 (10th Cir.1992).

### I. Inclusion of Interest in the Loss Calculation

The district court determined a loss to victims under U.S.S.G. § 2F1.1 of $267,-500.27, consisting of $196,583.27 in investment principal and $70,917.00 in interest due to investors. The interest was based on the rate promised to the victims. The inclusion of interest increased the sentencing level one step in the fraud loss calculation.

Mr. Lowder argues that interest should not be included because the interest amounted to lost profit, citing *United States v. Bailey,* 975 F.2d 1028 (4th Cir.1992). In *Bailey,* the defendant solicited investors in a venture to promote concert events. The Fourth Circuit held that the loss should be limited to the $8.8 million actual loss, and not the $16.2 million in projected profits. *Id.* at 1031. *Bailey* did not involve the promise to pay a specific rate of return, nor did the defendant send account summaries showing specific amounts owed. We have previously held that probable or intended loss, if determinable, may be used instead of actual loss. *United States v. Hershberger,* 962 F.2d 1548, 1554 (10th Cir.1992); *see also United States v. Johnson,* 908 F.2d 396 (8th Cir.1990) (where defendant never intended to repay loan, loss for sentencing purposes is the entire amount of the loan, not just the actual net loss).

We must also consider the revised commentary to Guideline 2F1.1, which provides:

> As in theft cases, loss is the value of the money, property, or services unlawfully taken; *it does not, for example, include interest the victim could have earned on such funds had the loss not occurred....* [I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.

U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1, 1991) (emphasis added). We interpret the guideline as disallowing "opportunity cost" interest, or the time-value of money stolen from victims. Here, however, Defendant defrauded his victims by promising them a guaranteed interest rate of 12%. He induced their investment by essentially contracting for a specific rate of return. He also sent out account summaries, showing the interest accrued on their investment. This is analogous to a promise to pay on a bank loan or promissory note, in which case interest may be included in the loss. *See United States v. Jones,* 933 F.2d 353 (6th Cir.1991) (interest properly included in loss calculation where defendant defrauded credit card issuers).

## II.  Acceptance of Responsibility

Mr. Lowder next contends that the district court erred in denying him a sentence reduction for acceptance of responsibility. We review for clear error. *United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990). The burden is on the defendant to show "a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Mr. Lowder argues that he accepted responsibility by beginning restitution and discontinuing the fraudulent stock sales prior to the government's investigation. However, he did not stop his fraudulent activities until after the Oklahoma Department of Securities began an investigation.

Furthermore, this guideline was not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. U.S.S.G. § 3E1.1, comment. (n. 2). The district court did not err in denying Defendant a downward adjustment.

## III.  Enhancement for Obstruction of Justice

Mr. Lowder received a sentence enhancement for obstruction of justice, based on false testimony given at trial. *See* U.S.S.G. § 3C1.1. He contends that the district court failed to make specific findings setting out the false testimony. In *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court found that perjury is sufficient to justify an upward departure for obstruction of justice. If the defendant objects to the enhancement, the district court must review the evidence and make independent findings necessary to establish perjury (as opposed to inaccurate testimony due to mistake or faulty memory). *Id.* —— U.S. at ——, 113 S.Ct. at 1117.

At sentencing, the district court reviewed the contradictions between the testimony of Defendant and other witnesses, and determined that portions of Defendant's testimony were untruthful. Aplt.App. at 67. These findings were sufficient to establish specific

instances of perjury and support an enhancement for obstruction of justice.

## IV. Double Counting

■ Mr. Lowder next contends that the district court's two level enhancement for violation of a judicial or administrative order (U.S.S.G. § 2F1.1(b)(3)(B)) in addition to enhancements for more than minimal planning (U.S.S.G. § 2F1.1(b)(2)(A)) and vulnerable victim (U.S.S.G. § 3A1.1) improperly penalizes him for the same conduct.

■ The district court appropriately adjusted for more than minimal planning, because this case involved repeated acts over a period of time. *See United States v. Williams,* 966 F.2d 555, 559 (10th Cir.1992). The court also properly enhanced Defendant's sentence for preying on vulnerable victims. As the court stated, "I can't imagine how we could have a more perfect example of a vulnerable victim.... They were people who were inexperienced, they were elderly and they were particularly reliant on these funds for their retirement and for their income and I think they were particularly vulnerable victims." Aplt.App. at 57–58. Mr. Lowder argues that the additional enhancement for violating the Oklahoma cease and desist order amounts to double counting because the same victims were involved.

Defendant relies on *United States v. Romano,* 970 F.2d 164 (6th Cir.1992), in which the defendant received sentence enhancements for being an organizer or leader and for more than minimal planning. The court found that being an organizer or leader necessarily included more than minimal planning, and that this overlap amounted to double counting. *Id.* at 166–67. We find *Romano* distinguishable, because the enhancements involved here are distinct, do not necessarily overlap, and serve different purposes. *See United States v. Willis,* 997 F.2d 407 (8th Cir.1993) (disagreeing with *Romano* ). The multiple enhancements do not constitute impermissible double counting.

## V. Enhancement Based on the Value of Funds Laundered

■ The Defendant received a one-level enhancement for laundering funds in excess of $100,000. *See* U.S.S.G. § 2S1.2. Defendant purchased a house with a personal note and then sold the house to Octagon Corporation for $100,000 in cash. He used the proceeds to pay off his bankruptcy debt to Chisholm Savings & Loan. Octagon investors were not informed of the transaction. Defendant argues that the value of the house should not be included.

Defendant first argues that the house should not be counted because he used proceeds from the sale of the house to reimburse investors. However, in calculating the offense level under § 2S1.2, the court looks to the total amount of funds involved in the laundering transactions, not the net loss. *United States v. Johnson,* 971 F.2d 562, 576 (10th Cir.1992).

■ Defendant, relying on *United States v. Mennuti,* 639 F.2d 107 (2nd Cir.1981), alternatively argues that the house sale does not constitute interstate commerce, as required by 18 U.S.C. § 1957(f)(1). Defendant's failure to raise this issue at sentencing limits our review to plain error. *United States v. Brewer,* 983 F.2d 181, 183 (10th Cir.1993). "Under the plain error standard, we will not review the district court's factual findings relating to sentencing, but will review for 'particularly egregious' or 'obvious and substantial' legal error, which our failure to consider would result in a 'miscarriage of justice.'" *Id.* (quoting *United States v. Saucedo,* 950 F.2d 1508, 1511–18 (10th Cir.1991)).

We have previously held that the interstate commerce requirement of § 1957 must be met in order to confer jurisdiction, but it is not an essential element of the crime charged. *United States v. Lovett,* 964 F.2d 1029, 1038 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992). The interstate commerce requirement has been read broadly, and minimum interstate contacts are sufficient to satisfy § 1957. *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.1991). We find no miscarriage of justice in the sentence enhancement. *See United States v. Peay,* 972 F.2d 71, 74–75 (4th Cir.1992) (funds deposited with federal insured institution satisfies interstate commerce requirement).

## VI. Enhancement for Knowingly Laundering Illegal Funds

■ The district court imposed a two-level enhancement based on the Defendant's knowledge that the laundered funds were the proceeds of specified unlawful activity. *See* U.S.S.G. § 2S1.2(b)(1)(B). Defendant claims that the enhancement was improper because: (1) the funds did not affect a financial institution, and (2) he was never aware that his conduct constituted a specified unlawful activity, and the automatic application of this provision violates his right to due process.

As to the first argument, Mr. Lowder was charged under the § 1956 definition of "specified unlawful activity," which includes mail fraud as a racketeering activity. Aplee. Supp.App. at 4; 18 U.S.C. § 1956(c)(7)(A) (referencing 18 U.S.C. § 1961). Hence, there was no requirement that a financial institution be affected.

Nor were Defendant's due process rights violated. Defendant knew that the source of the funds was his fraudulent investment scam. He was tried and convicted of mail fraud and money laundering. "There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction ... and punishing also the completed transaction." *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985).

## VII. Abuse of a Position of Trust

■ Defendant received a two point enhancement for abuse of position of trust. *See* U.S.S.G. § 3B1.3. Abuse of a position of trust is a factual determination that we will uphold unless clearly erroneous. *United States v. Fox*, 999 F.2d 483 (10th Cir.1993). An enhancement is proper if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated ... the offense." *Id.* Mr. Lowder contends that he used no position of trust or special skill to spend funds under § 1957. He merely wrote checks for the company. The district court found that it was only because of his position as president of the sham corporations that he was entrusted with and able to spend the money.

We recently set forth a number of factors relevant to this determination, including defendant's level of knowledge and authority, the level of public trust in defendant, and whether the abuse could be easily or readily noticed. *United States v. Williams*, 966 F.2d 555, 557 (10th Cir.1992). Here, Mr. Lowder was a CPA who provided tax and financial advice to elderly and unsophisticated clients. He advised them to place their money with him and promised them security. As president of the corporations he was free to spend that money, without oversight. The district court did not err in finding an abuse of position of trust.

## VIII. The Government's Closing Argument

■ During rebuttal argument, the government attorney made the following remarks:

> Think about who gets left out in one of these trials. The government gets a table here. We've got some lawyers; we've got some FBI agents. The Defendant's got a table. He's got a lawyer. Of course, he ought to have a lawyer. It's his right. There's nothing wrong with that. Who gets left out? The victims get left out. They don't get anybody to talk for them. They don't get a lawyer. If they're witnesses, they don't even get to watch the trial.

Aplt.App. Exhibit 14. The trial court sustained Defense counsel's objection, and admonished the jury to disregard the reference to the victims. Mr. Lowder claims that the prosecutor improperly inferred to the jurors that they were the protectors of the victims.

■ To determine whether a defendant has been denied a fair trial by an improper remark, we "consider the trial record as a whole and ... ignore errors that are harmless, including most constitutional violations." *United States v. Hastings*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983). We will overturn the conviction only where the prosecutor's misconduct was flagrant enough to influence the jury to convict on grounds other than the evidence presented. *United States v. Pena*, 930 F.2d 1486, 1491 (10th Cir.1991). Here, the prosecutor's re-

marks were improper, and we do not condone this type of argument. However, in view of the entire record and the judge's curative instruction, we do not find that the remarks deprived Defendant of a fair trial.

AFFIRMED.