16 F.3d 418
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce W. HUNTER, Defendant-Appellant.
 No. 93-1188.
 United States Court of Appeals, Tenth Circuit.
 Feb. 4, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, McKAY, and BALDOCK, Circuit Judges.
 
 SEYMOUR
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Bruce W. Hunter appeals the calculation of his sentence under the United States Sentencing Guidelines (U.S.S.G.). A nineteen count indictment charged Mr. Hunter with bank fraud, mail fraud, money laundering, and related matters. He pled guilty to count one, charging bank fraud in violation of 18 U.S.C. 1344 and 2, and counts eighteen and nineteen, charging financial transactions in criminally derived property in violation of 18 U.S.C.1957. Mr. Hunter argues that the district court erred in calculating his offense level on counts eighteen and nineteen under the sentencing guidelines. He contends that the court erred in increasing his offense level two levels to reflect his knowledge that the funds were the proceeds of mail fraud, three levels to reflect relevant conduct in the amount of $553,000, and two levels to reflect abuse of a position of trust. We affirm.
 
 I.
 
 3
 The facts relevant to the issues on appeal were stipulated to in the plea agreement signed by both parties. On or about January 15, 1988, Mr. Hunter caused $75,000 to be transferred from a Kwik Fries, Inc. bank account designated for holding investor funds to an account personally controlled by him. On or about the same day, Mr. Hunter withdrew $75,000 from this personal account and used the funds to make payments on four personal loans.
 
 
 4
 At the time he made the transfer and withdrawal, Mr. Hunter knew that the funds were derived from mail fraud in violation of 18 U.S.C. 1341. This fraud arose when Mr. Hunter falsely represented to company auditors, investors, and others that he had made cash payments of $328,000, $90,000 and $135,000 to acquire certain "world-wide rights" to french fry vending machines from Kwik Chips Investments, LTD. In order to repay himself for the alleged cash payments, Mr. Hunter caused an account to be created on the books of Kwik Fries, Inc. The payments were withdrawn through this account. In fact, Mr. Hunter never made the cash payments, and the representations he made to the company's auditors and investors were false.
 
 II.
 
 5
 Mr. Hunter was sentenced to forty-one months pursuant to the sentencing guidelines after pleading guilty to the two counts charging financial transactions in criminally derived property. He received three separate upward adjustments pursuant to three specific offense characteristics. He objected to these increases at the trial court and was overruled. On appeal, he argues that the court erred in applying each of them.
 
 
 6
 First, the court increased the offense level by two points according to U.S.S.G. 2S1.2(b)(1)(B) because Mr. Hunter knew the $75,000 was derived from a mail fraud scheme. Mr. Hunter contends that the court erroneously applied this section because the government did not offer any proof that he knew the funds were derived from a mail fraud scheme. In the plea agreement, however, Mr. Hunter stipulated that "[a]t the time of making the funds transfer and withdrawal, Hunter knew that these funds were derived from a specified unlawful activity, namely mail fraud, in violation of 18 U.S.C. 1341." Rec., vol. I, doc. 8 at 6. This was all the proof the district court needed to raise Mr. Hunter's offense level under section 2S1.2(b)(1)(B).
 
 
 7
 Mr. Hunter's second argument is that the district court erred in using $553,000 as the total amount of funds derived from the mail fraud scheme to arrive at a three level upward adjustment under U.S.S.G. 2S1.2(b)(2). He bases his argument on United States v. Johnson, 971 F.2d 562, 576 (10th Cir.1992), where we held that 3D1.2(d) does not authorize the court to add funds associated only with acts of wire fraud to funds involved in a money laundering transaction because the harm being measured in each instance is significantly different. In the instant case, however, the level increase was determined under 2S1.1(b)(2)(d) alone. In Johnson, we stated that "the measure of harm under 2S1.1 is the total amount of funds involved." Id.
 
 
 8
 Although we find that 3D1.2(d) does not authorize the court to add funds associated with acts of wire fraud to money-laundering funds, we note that funds associated with uncharged instances of money laundering can be added in to determine the offense level under 2S1.1 if those acts are within the scope of relevant conduct under 1B1.3(a)(2).
 
 
 9
 Id. at n. 10. Mr. Hunter stipulated in the plea agreement as follows:
 
 
 10
 The $75,000 in funds were derived from a mail fraud scheme that arose when Hunter falsely represented to company auditors, investors and others that he had made cash payments of $328,000, $90,000 and $135,000 to acquire certain "world-wide rights" to french fry vending machines from Kwik Chips Investments, Ltd. (KCIL). In order to repay himself for the alleged cash payments, Hunter caused to be created, on the books of Kwik Fries Inc., an account no. 0-000-2152-000, titled "Loans, FCI." FCI is Financial Consultants International, Inc., a purported corporation that was under the sole control of Bruce W. Hunter. The cash payments referred to above were withdrawn through this account. In fact, the cash payments were never made by Hunter, and the representations made to the company's auditors and investors were false.
 
 
 11
 Rec., vol. I, doc. 8 at 6 (emphasis added). Because Mr. Hunter admitted that all the funds were laundered, the court did not err in using the total of these amounts to increase Mr. Hunter's sentence level pursuant to U.S.S.G. 2S1.1.
 
 
 12
 Mr. Hunter's last argument that the trial court erred in assessing a two level upward adjustment for abusing a position of trust under U.S.S.G. 3B1.3 is also without merit. Based on the language of 3B1.3, we have stated that:
 
 
 13
 [A]n enhancement for abuse of trust is appropriate only if 1) the defendant occupied a position of trust, 2) the defendant abused his or her position in a manner that significantly facilitated his or her offense, and 3) abuse of trust is not included in the base level offense or specific offense characteristics pertaining to the defendant's crime.
 
 
 14
 United States v. Queen, 4 F.3d 925, 927 (10th Cir.1993). We have previously held that abuse of trust is not included in the base offense level or specific offense characteristics for mail fraud. Id. at 928. Thus, the district court properly considered 3B1.3 in sentencing Mr. Hunter.
 
 
 15
 In his reply brief, Mr. Hunter asserts that he did not occupy a position of trust. We disagree. He engaged in financial transactions in property derived from his own mail fraud scheme. He used his position as president of Kwik Fries, Inc. To attract investor funds based upon his own false representations that he had personally made large cash payments to acquire rights to french fry vending machines. He also used his position as president to create an account under his sole control, transfer funds into it, and later withdraw them. In a similar case, we held that a president of a corporation abused a position of trust when he fraudulently solicited investments from tax clients. United States v. Lowder, 5 F.3d 467, 473 (1993). The defendant in Lowder advised investors to place their money with him, was entrusted with the corporate funds, and was able to spend them substantially without oversight. Id. Mr. Hunter similarly abused a position of trust, and the trial court's increase based on this finding was not erroneous.
 
 
 16
 The trial court's decision is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 22, 1993. --- F.3d ----