109 F.3d 1436
 46 Fed. R. Evid. Serv. 1042, 97 Cal. Daily Op.
Serv. 2275,
97 Daily Journal D.A.R. 4131
UNITED STATES of America, Plaintiff-Appellee,
v.
Juri RIPINSKY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
J. Malcolm KINGSTON, Defendant-Appellant.
 Nos. 94-50486, 94-50488.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1995.
Submission Withdrawn Jan. 31, 1996.
Resubmitted Feb. 4, 1997.
Decided March 28, 1997.
 
 Stephen D. Alexander, Fried, Frank, Harris, Shriver & Jacobson, Los Angeles, California, and Jed S. Rakoff, Fried, Frank, Harris, Shriver & Jacobson, New York, New York, for defendant-appellant Ripinsky.
 H. Dean Steward, Assistant Federal Public Defender, Santa Ana, California, for defendant-appellant Kingston.
 Richard A. Friedman, Criminal Division, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California, William J. Rea, District Judge, Presiding, D.C. No. CR-93-409(A)-WJR.
 Before WALLACE, KOZINSKI, and RYMER, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Ripinsky and Kingston appeal from their convictions and sentences for conspiracy to commit bank fraud, 18 U.S.C. § 371, bank fraud, 18 U.S.C. § 1344, wire fraud, 18 U.S.C. § 1343, and money laundering, 18 U.S.C. § 1957, as well as the criminal forfeiture of certain assets and orders of restitution. The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction to review their convictions and sentences pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. The notices of appeal were filed after sentencing but before judgment had been entered. The notices are timely, however, as they are deemed filed on the date of and after judgment has been entered. See Fed.R.App.P. 4(b) ("[a] notice of appeal filed after the announcement of a decision, sentence, or order--but before entry of the judgment or order--is treated as filed on the date of and after the entry"). We affirm.
 
 
 2
 * The indictment under which Ripinsky and Kingston were convicted alleged that they defrauded Independence Bank of Encino, California, by taking undisclosed finder's fees in connection with the purchase of real estate properties by six real estate ventures in which they and Independence Bank were jointly involved. Ripinsky and Kingston received equity interests in return for managing the ventures. They were convicted of defrauding Independence Bank and other lenders by causing payment of up-front finder's fees for locating the properties Ripinsky and Kingston themselves controlled. Because Ripinsky and Kingston disclosed that the finder's fees were being paid and the agreement between the parties did not specifically prohibit Ripinsky and Kingston from accepting such fees, the principal issues at trial were whether they had a duty to inform Independence Bank and the third party lenders that they were the recipients of the fees and, if so, whether they had actually made adequate disclosures.
 
 II
 
 3
 Ripinsky and Kingston first contend that the district court erred by refusing their proposed theory-of-defense instruction, which stated that disclosure of the payments to Independence Bank's President, Shoaib, constituted a complete defense to the crime of bank fraud.
 
 
 4
 Failure to instruct the jury on a theory-of-defense is reversible error if it "is supported by law and has some foundation in the evidence." United States v. Lopez, 885 F.2d 1428, 1434 (9th Cir.1989) (Lopez ) (citation omitted), cert. denied, 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990), overruled on other grounds, Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). However, "[a] defendant is not entitled to any particular form of instruction," United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.), cert. denied, 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992), and "[i]t is not error ... to reject a theory-of-the-case instruction if the other instructions in their entirety cover the defense theory." Lopez, 885 F.2d at 1434. Whether other instructions, in their entirety, adequately cover a defense theory is a question of law reviewed de novo. United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992). However, the district court's determination that a theory-of-defense is not supported factually is reviewed for abuse of discretion. Id.
 
 
 5
 Co-defendant Advani pleaded guilty, was called by the government, and testified that he disclosed the nature of the payments to Shoaib. This evidence supports two possible defense theories: (1) that Ripinsky and Kingston disclosed the finder's fees, and (2) that they lacked the intent to defraud.
 
 
 6
 Disclosure to bank officers is not a complete defense to bank fraud; "[i]t is the financial institution itself--not its officers or agents--that is the victim of the fraud the statute proscribes." United States v. Molinaro, 11 F.3d 853, 857 (9th Cir.1993), cert. denied, 513 U.S. 1059, 115 S.Ct. 668, 130 L.Ed.2d 602 (1994), quoting United States v. Saks, 964 F.2d 1514, 1518 (5th Cir.1992). Molinaro demonstrates that Shoaib's consent to the payment of the finder's fees does not itself constitute a complete defense. Similarly, in United States v. Unruh, 855 F.2d 1363 (9th Cir.1987) (Unruh ), cert. denied, 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988), we stated that: "[The board's] knowledge, ratification, and consent are not per se defenses to the charge [of misapplication of bank funds]. Instead these are evidentiary matters that may be considered as part of the defense that there was either no willful misapplication or no intent to injure the bank." Id. at 1368, quoting United States v. Cauble, 706 F.2d 1322, 1353 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).
 
 
 7
 Ripinsky and Kingston cite several authorities to support their contention that the bank must be charged with knowledge of any information that was disclosed to Shoaib, thus making it impossible for Independence Bank to have been defrauded. The authorities cited, however, all involve unrelated areas of law in which different principles and concerns control. For example, In re Carter (Wells Fargo Bank v. Carter), 511 F.2d 1203, 1204 (9th Cir.1975), states that "[g]enerally, a bank is chargeable with knowledge acquired by the manager or officers of a branch bank in the course of their duties." However, this was in the context of determining whether a bank had knowingly failed to provide notice to a bankrupt creditor, thereby preventing it from collecting a deficiency judgment. While there is good reason for a bank to be charged with information known to its officers when determining whether it should obtain a benefit at someone else's expense, those concerns are not present here. As we stated in Unruh: "If valid consent were a complete defense ... the board would have the power to sanitize conduct that would otherwise be a crime. The cases can not be presumed to have created a license to steal." Unruh, 855 F.2d at 1368. While Unruh involved section 656 rather than section 1344, the same concerns apply here. Disclosure to Shoaib does not constitute a complete defense to bank fraud.
 
 
 8
 Ripinsky and Kingston argue that Unruh requires reversal of their bank fraud convictions. In Unruh, we concluded there was reversible error in the district court's refusal to instruct the jury that it should consider disclosure to bank officials "[i]n determining whether any defendant harbored an intent to defraud." Id. at 1372. Here, Ripinsky and Kingston did not request such an instruction. Instead, Ripinsky requested an instruction that was partially incorrect as a matter of law and then did not object when the district court rejected it. The requested instruction read in part:
 
 
 9
 For example, you have heard evidence that Mr. Ripinsky believed that Mr. Kemal Shoaib, the Chairman of Independence Bank, had been informed that the fees in question would be received by the defendants. Such a belief on Mr. Ripinsky's part would constitute a complete defense to the charges of bank fraud ... contained in the Indictment, because good faith on the part of Mr. Ripinsky is simply inconsistent with the intent to defraud or the intent to obtain money or property by means of false or fraudulent pretenses, representations, or promises.
 
 
 10
 (Emphasis added.) This instruction was inaccurate in that it required the jury to infer good faith from the fact that Ripinsky believed the bank president was aware of the fraud. If an inference of good faith is required whenever bank officials are aware of the activity at issue, then disclosure to bank officials would constitute a complete defense to bank fraud, a position we have already rejected. A correct good faith instruction, like the one proposed in Unruh, would have informed the jury that it could consider disclosure as important evidence of good faith. Moreover, the jury here was given a two-page generic good faith instruction.
 
 
 11
 Ripinsky and Kingston did not object when the district court refused to give the proposed good faith instruction. Unless Ripinsky and Kingston can show that an objection would have been a "pointless formality," we must review the failure to instruct for plain error. See United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989). Ripinsky and Kingston point out that they objected when the district court declined to give another proposed instruction relating to their good faith defense, but the objection proved unavailing. But "[t]he offering of an alternative instruction combined with an objection to a related part of the questioned instruction does not satisfy the 'pointless formality' exception." Id. Given that the jury was adequately instructed on good faith, the failure to give a more specific instruction did not "affect substantial rights" of Ripinsky and Kingston. See Fed.R.Crim.P. 52(b).
 
 III
 
 12
 Ripinsky and Kingston next contend that the district court erred by admitting evidence that they diverted Old Towne Mall asbestos removal funds. They were not indicted for diverting funds from the Old Towne Mall asbestos removal fund, but the district court permitted the government to admit evidence of these events.A.
 
 
 13
 Ripinsky and Kingston argue the evidence was of "other crimes" and was erroneously admitted under Federal Rule of Evidence 404(b) without any limiting instruction. Whether the evidence admitted related to "other crimes" within the meaning of Rule 404(b) is reviewed de novo. United States v. Soliman, 813 F.2d 277, 278 (9th Cir.1987) (Soliman ). If it was "other crimes" evidence, the district court's decision to admit it without giving a limiting instruction is reviewed for abuse of discretion. Id.; United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993).
 
 
 14
 Rule 404(b) permits the introduction of "other crimes" not alleged in the indictment for limited purposes such as proving a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence should not be treated as "other crimes" evidence, however, and may therefore be admitted for all purposes, when the evidence concerning the other act and the evidence concerning the crime charged are "inextricably intertwined." Soliman, 813 F.2d at 279 (citation omitted).
 
 
 15
 We conclude that the evidence was "inextricably intertwined" with evidence of crimes charged in the indictment and was not evidence of "other crimes" under Rule 404(b). "[T]he policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." Id. (citation omitted). The only reason Ripinsky and Kingston were not indicted for these crimes was that the government learned about them too late. Thus, the policies underlying Rule 404(b) are not applicable here. Moreover, these crimes can be seen as direct evidence of the ongoing conspiracy charged in the indictment.
 
 
 16
 Ripinsky argues that the "inextricably intertwined" evidence exception is limited to circumstances in which it is necessary to introduce such evidence in order "to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context." See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir.1992). While this use is allowable, nothing suggests that the "inextricably intertwined" evidence exception is meant to be so limited. See United States v. Freeman, 6 F.3d 586, 599 (9th Cir.1993) (concluding that there was no abuse of discretion by not excising testimony concerning inextricably intertwined other crimes, even though the evidence could have been excised without preventing the government from being able to put the testimony in context), cert. denied, 511 U.S. 1077, 114 S.Ct. 1661, 128 L.Ed.2d 378 & 511 U.S. 1147, 114 S.Ct. 2177, 128 L.Ed.2d 896 (1994). The crimes here were part of the ongoing scheme to defraud the banks, they were part of the same transaction (the Old Towne Mall deal) to which some of the counts in the indictment related, and they were direct evidence of the ongoing conspiracy.
 
 B.
 
 17
 Ripinsky and Kingston also argue that the admission of this evidence violated their right to be tried only on the charges returned by the grand jury. This claim is frivolous. They were clearly convicted of crimes set forth in the indictment. The fact that evidence of other crimes was also admitted does not constitute a violation of their Fifth Amendment grand jury rights in the absence of some indication that the jury convicted them of those other crimes and not of the crimes charged in the indictment. See United States v. Pisello, 877 F.2d 762, 766 (9th Cir.1989) (explaining that it was not a case involving "verdicts resting on proof so different from the proof accepted by the indicting grand jury that substantial rights of the defendant were affected").
 
 IV
 
 18
 Ripinsky and Kingston also contend that the section 1957 convictions must be reversed because the district court's general instruction on the meaning of "knowingly" negated its specific instruction on the knowledge element of the crime. The district court first gave a general instruction defining "knowingly" as requiring only general intent. The district court later gave a specific instruction concerning the section 1957 counts stating that the defendant must have known that the funds involved were derived from a criminal offense. Ripinsky and Kingston argue that the jury may have relied on the more general definition of "knowingly" rather than the more specific one given later regarding the section 1957 elements and that they may therefore have been convicted without all of the statutory elements being proved to the jury beyond a reasonable doubt.
 
 
 19
 In United States v. Stein, 37 F.3d 1407, 1409-10 (9th Cir.1994), cert. denied, 513 U.S. 1181, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995), the district court gave a general instruction on the definition of "knowingly" after it gave an instruction stating that section 1956 requires that the defendant know that the funds came from a criminal offense. We held that the two instructions may have allowed the jury to convict without finding that the defendant knew the funds were criminal proceeds and therefore constituted reversible Winship error.
 
 
 20
 Because Ripinsky and Kingston did not object to these instructions at trial, we review for plain error. Fed.R.Crim.P. 52; United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993) (Fagan ). Our recent decision in United States v. Keys, 95 F.3d 874 (9th Cir.1996) (en banc) (Keys ), pet. for cert. filed, 65 USLW 3507 No. 96-1089, does not make plain error review inappropriate. Although Stein was decided while this case was pending on appeal, it did not overrule any prior cases. There was no "solid wall of circuit authority" discouraging Ripinsky and Kingston from presenting these arguments to the trial court. See United States v. Golb, 69 F.3d 1417, 1428 (9th Cir.1995) (reviewing Stein error for plain error), cert. denied, --- U.S. ----, 116 S.Ct. 1369, 134 L.Ed.2d 534 (1996).
 
 
 21
 We recently held in United States v. Turman, 104 F.3d 1191 (9th Cir.1997) (Turman ), that whether an error is "plain" should be judged as of the time of trial.
 
 
 22
 Plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant.
 
 
 23
 Id. at 1194. The error assigned by Ripinsky and Kingston was not obvious at the time of their trial, and did not become so until we decided Stein. We therefore review for plain error, and Ripinsky and Kingston have not shown that there was any.
 
 V
 
 24
 We now address Ripinsky's interrelated contentions that the district court lacked subject matter jurisdiction over the section 1957 counts and deprived him of a jury determination of the jurisdictional element of the offense.
 
 
 25
 Section 1957(f) requires that the monetary transaction be "in or affecting interstate commerce." It also provides, however, that this requirement is met by any transaction that would be a "financial transaction" within the meaning of section 1956(c)(4)(B), which in turn defines "financial transaction" to include "a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree."
 
 
 26
 We hold that section 1957's jurisdictional requirement is an essential element of the offense that must be determined by the jury beyond a reasonable doubt. The government concedes that a nexus with interstate commerce is a jurisdictional requirement that must be proved by sufficient evidence. The government argues, however, that we should follow the Tenth Circuit and conclude that while a nexus with interstate commerce is a jurisdictional "requirement" under section 1957, it is not an "element" of the offense. See United States v. Lowder, 5 F.3d 467, 472 (10th Cir.1993) (Lowder ). We do not have that luxury because we are bound by our prior holdings that such requirements constitute essential elements that must be found by the factfinder. See, e.g., United States v. Nukida, 8 F.3d 665, 669-73 (9th Cir.1993), and cases cited therein.
 
 
 27
 The government also argues that because section 1957 contains the interstate commerce requirement in its definition of "monetary transaction," a monetary transaction is the essential element of the offense, and an effect on interstate commerce is simply part of the definition of that element. Citing United States v. Garza-Juarez, 992 F.2d 896, 910 (9th Cir.1993), cert. denied, 510 U.S. 1058, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994), the government urges us to hold that it was not plain error to fail to give the definitional instruction. In Garza-Juarez, we concluded that failing to define "possession" was not plain error where possession of the contraband (a silencer) was not contested at trial. Id. However, we relied to a certain extent on the fact that "possession" is a word of general use. Id. While "monetary transaction" is a term of general use that has a fairly clear meaning without further definition, the term is not ordinarily read to include only transactions that are in or affect interstate commerce. Thus, the failure to define "monetary transaction" as including the requisite jurisdictional element would be erroneous.
 
 
 28
 Our conclusion that section 1957's jurisdictional requirement constitutes an essential element of the offense leads us to United States v. Lopez, 514 U.S. 549, ---- - ----, 115 S.Ct. 1624, 1629-30, 131 L.Ed.2d 626 (1995), where the Court reiterated that Congress may regulate three broad categories of activity under its Commerce Clause powers: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) those activities having a substantial relation to or that substantially affect interstate commerce. Furthermore, the Court has explained that these three branches of its commerce power are analytically distinct. When Congress regulates the use of the channels of interstate commerce, or protects the instrumentalities of interstate commerce or persons or things in interstate commerce, it may do so without showing that the regulated activity substantially affects interstate commerce. See United States v. Robertson, 514 U.S. 669, ----, 115 S.Ct. 1732, 1733, 131 L.Ed.2d 714 (1995). The corollary of this is that a finding that the transaction was "in" interstate commerce or utilized the instrumentalities of interstate commerce is sufficient to satisfy section 1957's jurisdictional element. Accord United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir.1995) (checks drawn on federally insured banks and services purchased from out-of-state company sufficient); United States v. Peay, 972 F.2d 71, 74-75 (4th Cir.1992) (section 1956(c)(5)(B) is satisfied if transaction involves FDIC-insured institution), cert. denied, 506 U.S. 1071, 113 S.Ct. 1027, 122 L.Ed.2d 172 (1993); United States v. Lovett, 964 F.2d 1029, 1038 (10th Cir.) (transfer of funds across state lines and purchase of goods in interstate commerce with funds traceable to the transactions sufficient), cert. denied, 506 U.S. 857, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992). Only if the transaction was purely intrastate must the government show that it had some effect on interstate commerce. Moreover, because the regulated activity here--making financial transactions--is commercial in nature, the government need only prove that the individual transactions in this case each had a minimal effect on interstate commerce that, through repetition by others similarly situated, could have a substantial effect on interstate commerce. See Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); compare United States v. Pappadopoulos, 64 F.3d 522, 526-27 (9th Cir.1995) (government must show "substantial" effect on interstate commerce where regulated activity is noncommercial and traditionally regulated by state or local government).
 
 
 29
 Before we proceed further, it is important to explain that the issue is not really whether the district court had subject matter jurisdiction (it did), but whether the jury was properly instructed concerning the "jurisdictional" element of the offense. Because Ripinsky failed to object to the jury instructions, we can review them only for plain error. Fed.R.Crim.P. 52; Fagan, 996 F.2d at 1016. There was no "solid wall of circuit authority" approving the instructions at the time of trial. See Keys, 95 F.3d at 878.
 
 
 30
 The district court instructed the jury that "the deposit of a check constitutes a monetary transaction." Standing alone, this instruction was inadequate, but our review is limited to plain error. As explained earlier, we evaluate whether an error was "plain" as of the time of trial. Turman, 104 F.3d at 1195. In addition, we will exercise our discretion to correct an error under such circumstances only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 1778-79, 123 L.Ed.2d 508 (1993) (citation omitted).
 
 
 31
 We will not order a new trial. There is no dispute that the deposits in this case involved financial institutions engaged in interstate activities. Indeed, some of the deposits were made at large, well-known institutions such as Wells Fargo Bank. Ripinsky made no objection to the instructions given. The error was not plain and it did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. Under such circumstances we will not reverse the district court.
 
 VI
 
 32
 Kingston's next argument is that the district court abused its discretion and violated his Confrontation Clause rights by limiting the cross-examination of Royce Bonds. Limitations on cross-examination are reviewed for abuse of discretion. United States v. Dees, 34 F.3d 838, 843 (9th Cir.1994). Whether limitations on cross-examination are so severe as to amount to a violation of the Confrontation Clause is a question of law reviewed de novo. Id.
 
 
 33
 The district court did not foreclose all inquiry into Bonds's potential bias, and permitted questioning regarding allegations that Bonds created false documents. Bonds even admitted during cross-examination that he may have "backdated documents." In light of the FDIC investigator's testimony that there was no evidence, and only suspicion, that Bonds committed the acts charged in the criminal referral, the district court did not abuse its discretion in denying evidence of the criminal referral.
 
 VII
 
 34
 Finally, we address the sentencing issues. Kingston argues that the sentences must be vacated because the court failed to make any findings concerning the amount of the funds involved. Ripinsky argues, on the other hand, that the court used the sum of specific check deposits listed in the section 1957 counts, $1,745,000, and that this figure was erroneous because the loss resulting from the fraud was much less. We agree with the Tenth Circuit that under U.S.S.G. § 2S1.2, we look to the total amount of the funds involved in the transactions rather than the net loss. See Lowder, 5 F.3d at 472. It is not clear from the record whether the district court ever made any express finding on the amount of the loss. However, based on Lowder, the amount would be $1,745,000--the full amount of funds involved in the transactions. Moreover, because the same five level increase would apply if the amount of funds involved were anywhere between $1 million and $2 million, and the amount at issue clearly falls somewhere between these two figures, any failure on the part of the district court to calculate precisely the amount involved was harmless.
 
 
 35
 Ripinsky also argues that the district court should have departed downward because this is really a "fraud" case and not a "money laundering" case. He further argues that we have jurisdiction to review the district court's decision not to depart because by "relying on non-applicable Ninth Circuit authority" the government may have convinced the district court that it had no authority to depart.
 
 
 36
 The government argued that "downward departure is not permitted unless the district court has identified [a] mitigating circumstance of a kind or to a degree the sentencing commission did not adequately take into account in formulating the guidelines." The government went on to assert that the Sentencing Commission intended to impose harsher punishments on those who violate section 1957 as well as commit fraud. The government's argument was a correct statement of the law, see United States v. Lira-Barraza, 941 F.2d 745, 746 (9th Cir.1991) (en banc), overruled on other grounds, United States v. Beasley, 90 F.3d 400, 402-03 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 533, 136 L.Ed.2d 418 (1996), and clearly did not mislead the court. Moreover, the government is correct in asserting that the district court did not have authority to depart downward under the circumstances. See United States v. Rose, 20 F.3d 367, 374 & n. 6 (9th Cir.1994) (concluding that no legal basis exists for departing downward to reduce sentencing disparity between section 2S1.1 money laundering and the underlying wire fraud and declining to reach the issue of whether the district court believed it had authority to depart).
 
 
 37
 AFFIRMED.