**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

vs.

ROBERT BRYAN TREAS,

    Defendant - Appellant.

No. 99-2128
(D.C. No. CR-98-380-HB)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY** and **MURPHY**, Circuit Judges, and **COOK**, District Judge.[**]

Robert Bryan Treas was convicted of assault resulting in serious bodily injury (count I), 18 U.S.C. §§ 1153 and 113(a)(6), and use of a firearm to facilitate a crime of violence, 18 U.S.C. § 924(c) (count II), in connection with the shooting of Rae Ann Enjady. He was sentenced to 33 months and 60 months, respectively and consecutively, three years supervised release and fined $4,726.50.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Hon. H. Dale Cook, Senior United States District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

On appeal, Mr. Treas challenges the sufficiency of the evidence and contends that he was denied his Sixth Amendment right to a fair trial by prosecutorial misconduct. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Prior to shooting her, Mr. Treas had been involved in an on-again, off-again relationship with the victim, Ms. Enjady. Both are members of the Mescalero Apache tribe, and were living together in Ms. Enjady's house on the Mescalero reservation at the time of the shooting. The night of the shooting, Ms. Teresa Kaydahzinne, a neighbor of the victim, hosted a party which was attended by Mr. Treas and Ms. Enjady. Also in attendance was Ms. Kaydahzinne's nephew, Michael Kaydahzinne.

During the party, Mr. Treas became intoxicated and accused Ms. Enjady and Mr. Kaydahzinne of having a romantic relationship. Mr. Treas and Mr. Kaydahzinne engaged in a fistfight, which ended with Mr. Treas on the ground. Sometime during the fight, Ms. Kaydahzinne called the police. Immediately after the fight, Ms. Enjady took the keys to her house from Mr. Treas' pocket and walked home. She told Mr. Treas not to follow her home. According to witnesses, Mr. Treas responded with obscenities and threatened her with physical

harm.

Shortly afterward, Mr. Treas walked to Ms. Enjady's house. He broke a window and went in to get his gun from a drawer in the kitchen. In the meantime, the police officer who was responding to Ms. Kaydahzinne's call about the fight heard glass breaking nearby, and went to investigate. As he approached the house, he heard a man and woman arguing. He looked in the window and saw a man crouching over a woman lying on the floor. As he tried to find a way into the house, he heard a gunshot. He entered the house and saw Mr. Treas with a gun and Ms. Enjady with gunshot wounds to both of her arms.

At trial, Ms. Enjady testified that she blacked out as she walked down her hall after hearing glass breaking. The next thing she remembered was Mr. Treas standing over her as she lay on the floor, yelling and demanding she admit her relationship with Mr. Kaydahzinne. She testified she then heard two shots and remembers being hit in both arms. Immediately after the incident, Ms. Enjady told several people, including the paramedics, that Mr. Treas had shot her.

Mr. Treas testified at trial that he got the gun for protection in the belief that Mr. Kaydahzinne was in the area, and that Ms. Enjady was accidently shot twice as she struggled to get the gun away from him. This conflicted with what he told the FBI when first interviewed about the incident. At that time, he stated that he was leaving the kitchen with the gun and turned and fired when someone

turned on the kitchen light.

## A. Sufficiency of the Evidence

Mr. Treas claims that the government failed to introduce sufficient evidence to allow a reasonable jury to conclude that he intentionally shot Ms. Enjady. As a result, Mr. Treas asserts the trial court erred when it denied his motions for judgment of acquittal. In addition, Mr. Treas claims that because the conviction for assault underlies his conviction on the firearms charge, he should be acquitted of that charge as well.

We may reverse on a sufficiency of the evidence claim "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wacker, 72 F.3d 1453, 1462-63 (10th Cir. 1995). When evaluating the record de novo, we must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. See United States v. Hardwell, 80 F.3d 1471, 1482 (10th Cir. 1996).

Mr. Treas contends that the evidence was insufficient to prove that the shooting was intentional. Yet several witnesses, including Mr. Treas himself testified that, on the evening of the shooting, he was enraged with jealousy, believing that Ms. Enjady was having an affair. He repeatedly cursed at Ms. Enjady and threatened her in front of several witnesses. He broke a window to gain access to her home, got out his gun, and threatened her with it. Not only was

Ms. Enjady shot, but she had been beaten on the head and face, further suggesting Mr. Treas' violent intent. Finally, she was shot twice, in approximately the same location, on each arm. The prosecution proved its case using motive, physical evidence, and eyewitness testimony. The evidence that the shooting was intentional is overwhelming.

B. Prosecutorial Misconduct

Mr. Treas contends that he was denied a fair trial by prosecutorial misconduct and that the trial court erred in denying his motions for a mistrial and for a new trial. We review a trial court's denial of motions for a mistrial or a new trial for an abuse of discretion. See United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996). Even if the prosecution's conduct was improper, a conviction should be overturned only if the misconduct "was flagrant enough to influence the jury to convict on grounds other than the evidence presented." United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993). The trial court did not abuse its discretion in denying these motions.

Mr. Treas' contentions are based on two incidents occurring during the direct examination of Ms. Enjady. First, Mr. Treas complains about information elicited from Ms. Enjady in which she said defense counsel, during a pre-trial conversation, attempted to get her to describe the event as an accident, in order to protect Mr. Treas. The defense objected, but the court overruled the objection

and allowed her to complete her answer.

Second, Mr. Treas objects to the testimony elicited from Ms. Enjady concerning another encounter with defense counsel. This second conversation took place over the telephone, rendering defense counsel the only other witness. The court allowed the testimony to proceed, but cautioned the prosecutor to avoid the content of the conversation. Ms. Enjady was asked whether defense counsel was angry during the conversation. When Ms. Enjady's answer started to refer to the content of the conversation, defense counsel objected, and the objection was sustained. After that point, the conversation was not the subject of any further testimony.

The trial court did not abuse its discretion in denying Mr. Treas' motions for a mistrial or a new trial. In fact, we can discern no prosecutorial misconduct whatsoever. The defense had collected a statement from Ms. Enjady saying that the shooting was an accident. The prosecution notified the court before trial that it intended to elicit testimony from Ms. Enjady concerning the circumstances under which she made this statement. The court's pre-trial guidance concerning this issue was somewhat ambiguous. See IV Aplt. App. at 20-22, 33-34. When the prosecutor began to elicit testimony concerning the matter, the court overruled defense counsel's objection, expressly permitting the prosecution to continue with the line of questioning. The defense had called Ms. Enjady's credibility into

question during opening statements, and the testimony was relevant to explain Ms. Enjady's varying versions.

Mr. Treas also contends that the prosecution deliberately disregarded the trial court's instructions not to elicit the contents of the telephone conversation. By asking Ms. Enjady to characterize defense counsel's demeanor during the conversation, the prosecution was deliberately steering the witness *away* from revealing the content of the conversation. The prosecutor's actions were proper, as were the trial court's in denying Mr. Treas' motions for a mistrial and a new trial.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge