**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RAFAEL FLORES-GONZALES,

    Defendant-Appellant.

No. 00-2390

(D.C. No. CR-99-1407-JP)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

The issue in this direct criminal appeal is whether the district court abused its discretion by refusing to grant Defendant's motion for a mistrial based on an allegedly improper statement a government witness made in front of the jury. Our jurisdiction arises under 28 U.S.C. § 1291. Because we conclude the alleged improper statement was harmless, the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This case arises out of a trip into the desert of southern New Mexico, a few miles north of the United States-Mexico border, shortly after midnight on September 2, 1999. While patrolling that area, Border Patrol Agents Richard Martinez and Jose Gonzalez parked their patrol vehicle off State Highway 146. The agents observed the headlights of two cars traveling north, approximately two miles apart. Traffic in the area at that time of night usually consists solely of trucks from a nearby smelter. Their suspicions aroused, the agents first pulled over the lead vehicle, a red Ford LTD, bearing Mexico license plates. The agents located a cell phone in the LTD, leading them to believe that its occupants may have been in contact with the occupants of the second car, to act as a "scout" for the transportation of illegal drugs or aliens.

Based on their suspicions, the agents stopped the second car, a Mercury Cougar. Elena Simental drove the vehicle, accompanied by Defendant Rafael Flores-Gonzales in the front passenger seat. During the stop, the agents discovered 358 pounds of marijuana, much of it in plain view, located in the backseat and trunk compartment of the Cougar. Simental and Defendant admitted they were traveling with the LTD, and agreed to take the agents to the border site where "backpackers" had loaded the marijuana into the Cougar.

Defendant subsequently pled not guilty to a two-count indictment. Count I of the indictment charged Defendant with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846. Count II of the indictment charged Defendant with possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

Prior to trial, Defendant filed a motion in limine requesting that the Government not introduce certain topics, including "any criminal convictions, pending charges, or bad acts allegedly committed by the Defendant's common law partner, Rosalina Enriquez," or "any criminal conviction or bad acts attributed to the Defendant." Rec. Vol. III, at 5-6. The Government also agreed not to introduce evidence regarding "any criminal convictions, pending charges, or bad acts allegedly committed by the Defendant's common-law wife, Rosalina Enriquez." Rec. Vol. III, at 5.

At the time of their arrest, both Simental and Defendant stated they believed they were going to pick up an illegal alien, not drugs. In a written statement, Simental again stated that she believed she was to pick up an illegal alien and his luggage. Both Simental and Defendant, however, testified otherwise at trial. Defendant testified that he agreed to pick up a "fellow" and his suitcase and did not know anything illegal was happening until the marijuana was loaded

3

into the Cougar. Simental, after pleading guilty and signing a plea agreement, testified that she agreed only to transport approximately 20-25 pounds of marijuana. Simental claimed not to have known Defendant before the evening of September 2, 1999. She further claimed that Defendant knew the purpose of the trip was to transport marijuana. Simental claimed her previous statements were false, made-up at Defendant's request because he feared losing his resident alien status and being deported.

While testifying at Defendant's trial, Simental "blurted out" in front of the jury that Defendants' common-law wife had "been deported before because . . . ." Defense counsel interrupted Simental before she could finish her statement and requested a bench conference. Outside the presence of the jury, defense counsel requested a mistrial, objecting to the testimony on the premise that Simental's reference to Enriquez's deportation was highly prejudicial. Defense counsel argued that the jury would infer Enriquez's deportation was the result of a criminal conviction. Defense counsel further claimed that Enriquez's criminal character would prejudice the jury by allowing them to believe Defendant was part of a "criminal family" due to his close relationship with Enriquez.

The court denied defense counsel's motion for a mistrial, explaining that Defendant had not established sufficient prejudice. In response to a request from defense counsel, the district court instructed the Government to warn its witness

4

not to "blurt out anything else" contrary to the parties' pretrial agreement. Rec. Vol. V, at 186. Notably, defense counsel did not move to strike the testimony or request that the jury be given a limiting instruction. At trial, no further reference was made to Enriquez's deportation.

The jury found Defendant guilty on both counts of the indictment. The district court sentenced Defendant to sixty-three months imprisonment and recommended deportation. On appeal, Defendant's sole argument is that Simental's unsolicited testimony regarding Enriquez's deportation unduly prejudiced his defense and rendered his trial fundamentally unfair. The Government claims Simental's statement was an unexpected, inadvertent violation of the parties' pretrial agreement regarding Defendant's motion in limine, and did not substantially prejudice his defense.

## II.

We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Cerrato-Reyes, 176 F.3d 1253, 1258 (10th Cir. 1999). The decision to grant or deny a mistrial rests within the discretion of the district court because that court is best situated to evaluate the effect of improper testimony on the jury. United States v. Peveto, 881 F.2d 844, 859 (10th Cir. 1989). We will not reverse a decision to deny a motion for mistrial unless the moving party shows that the district court abused its discretion. United States

5

v. Wilson, 244 F.3d 1208, 1219 (10th Cir. 2001).

Defendant argues that Fed. R. Evid. 404(b) bars the admission of Simental's testimony because of the close relationship between the Defendant and his common law wife, Enriquez. Rule 404(b) prohibits the introduction of character evidence to show that a person acted in conformity therewith. Defendant cites, and we have found, no case law supporting the application of Rule 404(b) in a situation such as this. The alleged character testimony in dispute concerned the prior deportation of Defendant's common law wife, not Defendant himself.

Defendant claims Simental's statement allowed the jury to infer that criminal behavior led to Enriquez's deportation. Further, due to the close relationship between Defendant and Enriquez, the jury could infer that Defendant also had a criminal propensity. Because of the attenuated nature of the testimony in question, however, we believe Defendant's claim of prejudice is more properly based upon Fed. R. Evid. 403. Rule 403 requires us to determine whether the danger of unfair prejudice to Defendant "substantially outweighed" the probative value of the evidence.

For the sake of brevity, we assume Simental's statement before the jury regarding Enriquez's deportation had little, if any, probative value on any material issue in the case. Therefore, we focus on the prejudicial effect

6

Defendant claims to have suffered to determine whether that effect substantially outweighed the probative value of the statement. We will overturn a conviction for improper testimony only if that testimony "'was flagrant enough to influence the jury to convict on grounds other than the evidence presented.'" Wilson, 244 F.3d at 1219 (quoting United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993)).

In other words, a mistrial would be warranted only if "the improper testimony had an appreciable effect on the verdict." United States v. Sands, 899 F.2d 912, 914 (10th Cir. 1990). To determine the prejudicial effect of the testimony, we review the record de novo to evaluate whether the evidence of the prior deportation of Defendant's common law wife had a substantial influence on "'the jury's verdict in the context of the entire case against him.'" United States v. Wilson, 107 F.3d 774, 785-86 (10th Cir. 1997) (quoting United States v. Short, 947 F.2d 1445, 1455 (10th Cir. 1991)). We conclude it did not.

The Government's evidence at trial established that Defendant was a passenger in a car border patrol agents stopped near the United States-Mexico border in the middle of the night on a deserted highway. The car contained over 350 pounds of marijuana, much of it in plain view. The quantity of marijuana was so large that it filled the trunk and backseat compartment, was visible to passing traffic, and prevented Simental from properly sitting behind the wheel. A search of the car yielded a cell-phone and a walkie-talkie, both of which the

agents found under Defendant's seat. Defendant, presumably to thwart his identification, threw his wallet into the weeds at the time of the stop. Moreover, Defendant admitted at trial that he was previously arrested due to his presence in a car containing 150 pounds of marijuana.

In response to the evidence presented against him, Defendant claimed he had "been tricked" again, this time by Elena Simental, who deceived him into accompanying her into the desert and then refused to allow him out of the car. The jury, as trier of fact, simply chose not to believe Defendant, which was its prerogative. In light of the overwhelming evidence against Defendant, Simental's testimony regarding Enriquez's prior deportation did not substantially or appreciably affect the outcome of the case. Therefore, the district court properly denied Defendant's motion for a mistrial based upon the testimony.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge