**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 18 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 96-5147

SHARON KAY ALLEN,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 95-CR-81-H)

---

Art Fleak, Tulsa, Oklahoma, for Defendant/Appellant.

Kevin C. Leitch, Assistant United States Attorney, (Stephen C. Lewis, United
States Attorney and Gordon B. Cecil, Assistant United States Attorney, with him
on the brief), Tulsa, Oklahoma, for Plaintiff/Appellee.

---

Before **SEYMOUR**, Chief Judge, **MCKAY,** Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

---

**SEYMOUR**, Chief Judge.

Sharon Allen was convicted after a jury trial on three counts of uttering a forged instrument in violation of 18 U.S.C. § 513(a), and three counts of engaging in a monetary transaction with criminally derived property in violation of 18 U.S.C. § 1957(a). She was sentenced to seventy-four months in prison and three years of supervised release, and ordered to pay restitution in the amount of $10,000. On appeal, Mrs. Allen contends the trial court erred in instructing the jury with respect to the section 1957 counts and erred in denying her motion for acquittal on those counts, arguing that section 1957 does not apply to the facts of her case. Mrs. Allen also contends the trial court erred in several regards in calculating her sentence under the Sentencing Guidelines. We affirm.

# I

Mrs. Allen's arguments on appeal raise issues of law that do not require an extensive recitation of the facts underlying her convictions. Briefly, Mrs. Allen's criminal history reveals her chronic inability to keep her fingers out of the funds of others. Her present troubles began when she allegedly embezzled over $81,000 from her prior employer in California, Koll Management Services. Koll did not prosecute when Mrs. Allen agreed to pay back the money. Her current convictions arise from allegations that she embezzled $131,794.00 from a subsequent employer,

Berendsen Fluid Power, Inc., of Tulsa, Oklahoma, which she used in part to make restitution to Koll.

The three forgery counts are based on three checks against Berendsen that Mrs. Allen either wrote herself or knew were fraudulently prepared by others. These checks were deposited in an account opened by Mrs. Allen, from which she later withdrew funds that she converted to three cashier's checks and used to pay back the money she had taken from Koll. Two of the cashier's checks were payable to Koll and one of them was payable to Prudential Insurance Company. All of the checks were sent out of state and deposited in bank accounts in states other than Oklahoma. The section 1957 counts are based on Mrs. Allen's withdrawing the funds from the Tulsa account, converting them to cashier's checks, and sending them out-of-state for deposit.

## II

Mrs. Allen asserts that in instructing the jury on the elements of a section 1957 violation, the trial court erred in two regards. First, she contends the court's instruction on the requisite nexus with interstate commerce erroneously told the jury it did not have to find her actions actually affected interstate commerce. Second, she contends the court improperly instructed the jury with respect to the "knowledge" element of section 1957.

Section 1957 imposes criminal penalties on "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). The statute further provides that "the term 'monetary transaction' means the deposit, withdrawal, transfer, or exchange, *in or affecting interstate or foreign commerce,* of funds or a monetary instrument . . . by, through, or to a financial institution." *Id.* § 1957(f)(1) (emphasis added).

The portion of the interstate commerce instruction which Mrs. Allen challenges on appeal instructed the jury as follows:

> It is not necessary for the government to show that the defendant actually intended or anticipated an effect on interstate or foreign commerce, or that commerce was actually affected. All that is necessary is that the natural and probable consequences of the defendant's actions would be to affect interstate or foreign commerce, no matter how minimal.

Rec., vol. I at A-62. Mrs. Allen asserts that because an effect on interstate commerce is an essential element of a section 1957 violation, the jury was required to make a finding on it. She argues that her section 1957 convictions must be reversed because the court's instruction here eliminated that requirement, citing United States v. Aramony, 88 F.3d 1369, 1385-87 (4th Cir. 1996), cert. denied, 117 S. Ct. 1842 (1997), which reversed section 1957 convictions on the basis of an instruction virtually identical to that given here.

-4-

We begin our discussion of this argument by pointing out that this appeal differs from Aramony in at least one critical regard. The defendants in that case specifically objected to the above instruction on the ground that it did not require the jury to make a finding on the interstate commerce element. Mrs. Allen made no such objection. While the government indicated to the trial court its general dissatification with the standard jury instructions on section 1957, and the parties and the court discussed an instruction on another element of that offense, neither Mrs. Allen nor the government even mentioned the interstate commerce instruction. Although counsel for Mrs. Allen stated that he wanted "to object to everything to preserve my record," rec., vol. XVII at 923, such a general objection does not, of course, do so. The Rules of Criminal Procedure state that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed. R. Crim. P. 30. *See, e.g.,* United States v. Agnew, 931 F.2d 1397, 1401 n.3 (10th Cir. 1991) ("the heart of the rule" requires objection be made with specificity and distinctness). Absent such an objection, we review only for plain error. *See* United States v. Freeman, 813 F.2d 303, 305 (10th Cir. 1987).

The government asserts there was no error, much less a plain one, because the interstate nexus requirement of section 1957 is not an element of the crime and

therefore need not be submitted to the jury. In this regard, we have previously stated "[t]he requirement that the transaction be 'in or affecting interstate commerce' must be met in order to confer jurisdiction on federal courts. Such, however, is not an essential element of the crime charged." United States v. Kelley, 929 F.2d 582, 586 (10th Cir. 1991); *see also* United States v. Kunzman, 54 F.3d 1522, 1527 (10th Cir. 1995); United States v. Lovett, 964 F.2d 1029, 1038 (10th Cir. 1992). All of these cases, however, made that statement in the context of considering a challenge to the sufficiency of the evidence regarding that requirement; none of the cases address whether the issue is one for the jury or for the court.[1] Indeed, it is impossible to determine whether the issue in those cases was in fact decided by the court or by the jury. Even assuming that our description of the requirement as jurisdictional rather than an essential element of the offense necessarily implied that the jury need not decide the issue, our statements on the nature of the element in those cases were clearly dicta.

---

[1] Although the court in United States v. Van Brocklin, 115 F.3d 587, 596 (8th Cir. 1997), read our opinion in Kelley as holding both that the "affecting interstate commerce" requirement is a jurisdictional requirement *and* that it therefore need not be submitted to the jury, neither Kelley nor the other cases cited above dealt with the second issue. Indeed, in United States v. Grey, 56 F.3d 1219 (10th Cir. 1995), involving the interstate commerce requirement of 18 U.S.C. § 1956, the sister statute of section 1957, we stated that "[t]he necessary underpinning to establish the way or degree that a transaction affects interstate or foreign commerce is always factual in nature." Id. at 1225. We further stated that we could affirm only if the record evidence was sufficient to allow a trier-of-fact to find that element satisfied. Id. at 1224.

We believe the better view is to consider the "affecting interstate or foreign commerce" requirement of section 1957 as both jurisdictional and an essential element of the offense. *See* United States v. Ripinsky, 109 F.3d 1436, 1443-44 (9th Cir. 1997); United States v. Leslie, 103 F.3d 1093, 1101 (2d. Cir.), cert. denied, 117 S. Ct. 1713 (1997); Aramony, 88 F.3d at 1386. We further hold that the issue is one for the jury to resolve. We agree with those courts that have found support for this conclusion in the Supreme Court's decision in United States v. Gaudin, 515 U.S. 506 (1995), which holds that an element of a crime requiring the application of the law to the facts must be decided by a jury. *See* Aramony, 88 F.3d at 1386; *see also* United States v. Spriggs, 102 F.3d 1245, 1260 (D.C. Cir. 1996) (suggesting but not deciding that Gaudin supports requiring jurisdictional elements of crime to be decided by jury), cert. denied, 66 U.S.L.W. 3256 (U.S. Oct. 6, 1997) (No. 96-9082).

We must therefore assess whether the instruction on interstate commerce given in this case rises to reversible plain error in light of the above discussion. Under the plain error analysis set out by the Supreme Court in United States v. Olano, 507 U.S. 725 (1993), and interpreted recently in Johnson v. United States, 117 S. Ct. 1544 (1997),

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the

error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 1549 (citation and internal quotations omitted).

Mrs. Allen argues that the challenged instruction relieved the government from proving to the jury that her transactions actually had at least a minimal effect on interstate commerce. The government, on the other hand, asserts that the instruction properly informed the jury in the first sentence that the government need not prove defendant *intended* to actually affect interstate commerce, and in the second sentence that the government must prove the natural and probable consequences of defendant's actions would be to affect interstate commerce at least minimally. *See* supra p.4.

Jury instructions must be assessed as a whole. United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied, 117 S. Ct. 226 (1996). The jury here was also instructed that the government was required to prove Mrs. Allen engaged or attempted to engage in a monetary transaction, and defined "monetary transaction" as "the deposit, withdrawal, transfer, or exchange, *in or affecting interstate or foreign commerce* of funds or a monetary instrument by, through or to a financial institution." Rec., vol. I at A-61. Under this instruction the jury was required to find an effect on interstate commerce in order to find that Mrs. Allen engaged in a monetary transaction as required for a substantive violation.

We need not determine whether the jury instructions as a whole misled the jury or removed the issue from the jury's determination. Even assuming that a plain error affecting substantial rights occurred here, under Johnson the forfeited error does not meet the final requirement of Olano. In Johnson, the trial court removed from the jury's consideration the issue of materiality in a perjury prosecution. The Supreme Court ruled that plain error occurred and assumed that it affected substantial rights. The Court nonetheless held that because the evidence of materiality was overwhelming and essentially undisputed, the record contained no basis for concluding the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Johnson, 117 S. Ct. at 1550.

In this case, as the government points out, the evidence establishing the requisite effect on interstate commerce is also overwhelming and essentially uncontroverted. It is undisputed that Mrs. Allen deposited proceeds from the forged checks in a financial institution as defined in the statute, withdrew those funds, and transferred them by using cashier's checks to be deposited out of state. These uncontested facts establish the essential nexus with interstate commerce. Under these circumstances, the challenged jury instruction does not meet the Olano test for reversible error.

Mrs. Allen also asserts the trial court erred in instructing the jury on the knowledge element of section 1957. The statute forbids "knowingly engag[ing]

. . . in a monetary transaction in criminally derived property that is . . . derived from specified unlawful activity." 18 U.S.C. § 1957(a). The statute further provides that "[i]n a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity." *Id.* § 1957(c). "The knowledge element of the offense requires that the defendant know that the property in question is 'criminally derived,' although it does not require knowledge that the property was derived from 'specified unlawful activity.'" United States v. Pettigrew, 77 F.3d 1500, 1513 (5th Cir. 1996).

The district court instructed the jury without objection that "the government must prove only that defendant knew that the property involved in the monetary transaction constituted, or was derived from, directly or indirectly, proceeds obtained by some criminal offense. It need not prove that she knew the precise nature of the criminal offense from which the proceeds derived." Rec., vol. I at A-62. This instruction is a correct statement of the applicable law. Mrs. Allen's attempt to equate the instruction here with the one reversed in Pettigrew, 77 F.3d at 1513 & n.10, is unavailing. There the knowledge instruction given could "most reasonably be read to permit conviction if Pettigrew knowingly engaged in the transaction and the funds involved were in fact criminally derived without requiring any showing by the government that Pettigrew knew that the funds in question were

-10-

criminally tainted." *Id.* at 1513. Here the court specifically instructed the jury that the government had to prove Mrs. Allen knew that the proceeds were obtained from some criminal offense. Pettigrew is simply distinguishable on that critical ground.

## III

Mrs. Allen contends the trial court erred in denying her motion for a judgment of acquittal. She argues section 1957 does not apply when, as here, the evidence shows that a defendant is merely spending illegally obtained money with no attempt to conceal the transfers at issue. This argument is contrary to the plain language of the statute.

Section 1956, the companion statute to section 1957, prohibits money laundering as that activity is commonly understood. Section 1956 punishes conducting a financial transaction with the proceeds of specified unlawful activity knowing that the transaction is designed to conceal or disguise the nature, location, source, ownership or control of the proceeds, or intending that the transaction be so designed. *See* 18 U.S.C. § 1956(a)(1)(B)(i), (a)(2)(B)(i), (a)(3)(B). Section 1957, on the other hand, prohibits engaging in monetary transactions in property from specified unlawful activity, and contains no requirement that the transaction be designed to conceal anything. A defendant must know only that she is engaging in

-11-

a transaction and that the subject of the transaction is criminally derived property.

*See* 18 U.S.C. § 1957(a).

> Thus, Section 1957
>
> differs from section 1956 in two critical respects:  It requires that the property have a value greater than $10,000, but it does not require that the defendant know of a design to conceal aspects of the transaction or that anyone have such a design.  Due to the omission of a "design to conceal" element, section 1957 prohibits a wider range of activity than money "laundering," as traditionally understood.

United States v. Wynn, 61 F.3d 921, 926-27 (D.C. Cir. 1995).

> The description of [a section 1957 violation] does not speak to the attempt to cleanse dirty money by putting it in a clean form and so disguising it.  This statute applies to the most open, above-board transaction.  The intent to commit a crime or the design of concealing criminal fruits is eliminated.

United States v. Rutgard, 116 F.3d 1270, 1291 (9th Cir. 1997) (citation omitted).

As the court in Rutgard explained,

> [section 1957] is a powerful tool because it makes any dealing with a bank potentially a trap for the drug dealer or any other defendant who has a hoard of criminal cash derived from the specified crimes.  If he makes a "deposit, withdrawal, transfer or exchange" with this cash, he commits the crime; he's forced to commit another felony if he wants to use a bank.  This draconian law, so powerful by its elimination of criminal intent, freezes the proceeds of specific crimes out of the banking system.  As long as the underlying crime has been completed and the defendant "possesses" the funds at the time of deposit, the proceeds cannot enter the banking system without a new crime being committed.

*Id.*

-12-

Mrs. Allen's argument that section 1957 requires an intent to conceal is thus without merit.[2] "Section 1957 could apply to any transaction by a criminal with his bank." *Id.* The trial court did not err in denying the motion for acquittal.

## IV

Mrs. Allen asserts the trial court made several errors in calculating her sentence. She argues that her two-point upward adjustment for more than minimal planning constitutes impermissible double counting; that she should have been given a downward adjustment for acceptance of responsibility; that her two-point upward adjustment for knowing the proceeds were from a specified unlawful activity constituted double-counting; and that the forgery counts and the section 1957 counts should have been grouped for sentencing purposes. These arguments

---

[2] Mrs. Allen's reliance on United States v. Johnson, 971 F.2d 562 (10th Cir. 1992), is misplaced. In that case, we held the transactions at issue did not fall within section 1957 because they did not involve proceeds that had already been obtained through an underlying criminal offense. Id. at 569-70. Although we observed in passing that the legislative history of section 1957 shows Congress had in mind "the 'classic' case" of money laundering in drafting the provision, we also pointed out that "the Act itself prohibits a much broader range of conduct than just the 'classic' example of money laundering." Id. at 568-69. Mrs. Allen's reference to United States v. Massey, 48 F.3d 1560 (10th Cir. 1995), is likewise unavailing because that case merely applied the holding in Johnson. Moreover, Massey's reference to the "'post-crime hiding of illgotten gains,'" id. at 1566, was directed at section 1956, not section 1957.

-13-

challenge the district court's legal interpretation of the guidelines, which we review de novo. *See* Kunzman, 54 F.3d at 1531. We address them in order.

The district court adopted the recommendation of the presentence report that Mrs. Allen receive an adjustment under U.S.S.G. § 2F1.1(a)(2), which provides that forgery offenses are subject to a two-level increase in offense level if they involve more than minimal planning as defined in the Commentary to U.S.S.G. § 1B1.1. The Commentary in turn states that "'[m]ore than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses." U.S.S.G. § 1B1.1, comment. (n.1(f)).

Mrs. Allen concedes, as she must, that because her conduct consisted of repeated acts of uttering forged documents over a period of time, she falls within the language of the commentary deeming the presence of more than minimal planning. Nonetheless, she contends that because her actions in violating section 1957 could also have been used to support the enhancement, she was unfairly punished twice for the same conduct. This argument is utterly lacking in merit. The fact that other conduct, violative of section 1957, could have been used to support an enhancement for more than minimal planning is simply irrelevant when repeated acts over a period of time are also present. Moreover, as we have pointed out in a related context, "Congress intended to impose separate punishments for the

money-laundering transactions and for the underlying criminal activity." Johnson, 971 F.2d at 569. The enhancement for more than minimal planning therefore did not result in impermissible double punishment.

Second, Mrs Allen argues the court erred in refusing to grant her a downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The commentary to that guideline provides:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, comment. (n.2).

Our consideration of Mrs. Allen's argument that the court erred in denying her the benefit of this provision requires that we set out the relevant procedural history. Mrs. Allen originally entered into a plea agreement with the government under which she pled guilty to one count of uttering a forged check and one count of violating section 1957. The plea agreement expressly provided that Mrs. Allen waived "the right to appeal the sentence, directly or collaterally, on any ground

except to challenge the single legal issue of the lack of scienter as an element of violation of 18 U.S.C. § 1957." Rec., vol. I at A-27. After the district court accepted the plea and convicted Mrs. Allen but before she was sentenced, Mrs. Allen, through new counsel, filed several pleadings seeking dismissal of the section 1957 count for, among other things, lack of evidence of scienter. At a hearing on the motions, new defense counsel made clear to the court his concern that the issues he wished to challenge on appeal might not be properly preserved by the plea agreement. Rec., vol. VII at 14-18. Agreeing with counsel, the district court solved the problem by vacating the guilty plea and scheduling a trial date. The court made plain its view that Mrs. Allen now had all her options open: she could file motions to dismiss certain counts raising legal or evidentiary matters so as to clearly preserve issues for appeal, and then make a new plea agreement; or she could choose to go to trial to test the sufficiency of the evidence. *Id.* at 19.

Mrs. Allen chose the latter course and proceeded to trial. After her conviction, she objected to the recommendation in the presentence report that she not be given a reduction for acceptance of responsibility. Mrs. Allen did not argue that she went to trial in order to preserve her legal challenge to section 1957. Rather, she stated that "[t]he thrust of the defense involved the conduct and activities of two of the government witnesses . . . . The Defendant had the right to have an ultimate determination by a jury without being required to forfeit the 2

-16-

point downward adjustment for acceptance of responsibility in light of the defense asserted." Rec., vol. I at A-72. Thus Mrs. Allen went to trial not to preserve a legal issue but to test the government's evidence. Under these circumstances, the district court did not err in denying an adjustment for acceptance of responsibility. *See* United States v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir. 1994) (pleading not guilty and forcing the government to prove guilt at trial demonstrate denial of responsibility despite pre-trial confession).

Mrs. Allen also argues that her two-level upward adjustment under U.S.S.G. § 2S1.2(b)(1)(B) amounted to impermissible double counting. That guideline requires an enhancement for a section 1957 violation "if the defendant knew that the funds were not merely criminally derived, but were in fact the proceeds of a specified unlawful activity." *Id.* comment. (backg'd); *see also* United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993). Mrs. Allen contends this enhancement impermissibly punishes her for the same conduct that served as the basis for her convictions for uttering false checks. We disagree.

We reiterate that "Congress intended to impose separate punishments for the money-laundering transactions and for the underlying criminal activity." Johnson, 971 F.3d at 569. Moreover, "'[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction . . . and punishing also the completed transaction.'" Lowder, 5 F.3d at

473 (quoting <u>Garrett v. United States</u>, 471 U.S. 773, 779 (1985)).  Even assuming

the challenged enhancement punishes Mrs. Allen for the same conduct underlying

her other convictions, application of the enhancement is not improper for that

reason.[3]

Finally, Mrs. Allen asserts the district court should have grouped the counts

of uttering forged checks with the section 1957 counts.  Although other circuits

have adopted Mrs. Allen's position, this court has expressly and repeatedly rejected

her argument.  *See* <u>Kunzman</u>, 54 F.3d at 1530-31; <u>United States v. Smith</u>, 13 F.3d

1421, 1428-29 (10th Cir. 1994); <u>Johnson</u>, 971 F.2d at 575-76.

We **AFFIRM** the judgment of the district court.

------

[3] Mrs. Allen also challenges application of this enhancement as contrary to Congressional intent.  It may be true that Congress' primary concern in enacting section 1957 was with "third persons--bankers, brokers, real estate agents, auto dealers and others--who have aided drug dealers by allowing them to dispose of the profits of drug activity."  <u>Johnson</u>, 971 F.2d at 568.  Nonetheless, the statute also reaches the conduct of wrong-doers like Mrs. Allen who use financial institutions in transactions with the fruits of their own criminal activity.  <u>See</u> <u>Rutgard</u>, 116 F.3d at 1291.  Because both the plain language of the statute and the enhancement apply to Mrs. Allen, the court did not err in enhancing her section 1957 sentence under the challenged guideline.  Nevertheless, the trial court did accept the argument that Congress may not have intended to deal so harshly with defendants such as Mrs. Allen despite the inclusion of their conduct in the ambit of the enhancement.  Accordingly, it granted a two-level downward departure on that basis, a ruling the government has not appealed.  <u>See</u> rec., vol. XVIII at 26.