**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

———————

UNITED STATES OF AMERICA,      )
                                )
     Plaintiff-Appellee,        )
                                )
    v.                           )      No. 98-1479
                                )      (D.C. No. 98-CR-168-M)
TORRENCE KEITH JAMES,           )      (D. Colo.)
                                )
    Defendant-Appellant.       )

———————

**ORDER AND JUDGMENT**[*]

———————

Before **BALDOCK, BRISCO**E, Circuit Judges, and **CROW**, District Judge.[**]

———————

Torrence Keith James appeals his convictions on four counts of distributing

———————

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citations of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Sam A. Crow, Senior United States District Judge for the District of Kansas, sitting by designation.

crack cocaine in violation of 21 U.S.C. § 841,[1] arguing that the district court impermissibly struck on its own motion one prospective juror during voir dire and then improperly instructed the jury regarding their obligation to follow the law as imparted by the court. James contends that these errors deprived him of his right to a fair trial. The defendant also appeals the four sixty-five month concurrent sentences imposed by the district court on each count of conviction. The defendant contends that the district court erred when it denied his request for a "downward departure" for acceptance of responsibility pursuant to United States Sentencing Guidelines § 3E1.1 and that the district court denied his request for allocution prior to the imposition of sentence. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and affirms.

I.      <u>Challenges to the District Court Sua Sponte Striking a Prospective Juror and the District Court's Instructions to the Jury</u>

During voir dire, the district court sua sponte excused prospective juror William A. Altonin, a professor emeritus from Denver University. On appeal, the defendant argues that the district court committed reversible error when it sua

_____

[1] At trial, the government introduced evidence of controlled buys from the defendant. The telephone conversations arranging the controlled buys from James were tape recorded. Law enforcement officers took photographs of James as he sold crack cocaine to a cooperating witness. The cooperating witness who actually purchased the crack cocaine from James testified at trial. In this appeal, the defendant does not challenge the sufficiency of the evidence.

sponte struck prospective juror Altonin from the venire. Concomitant with his challenge to striking Altonin, the defendant argues that the district court incorrectly informed the jurors that it is their duty to follow the law as it instructed. The defendant contends that this admonition was a structural error mandating reversal. The defendant argues that the jury always has the power to acquit and that the district court's instructions trampled on the independence of the jury, making it impossible for the jury to render a fair decision in this case.

The government responds, arguing that the district court's decision to strike Altonin as a prospective juror was entirely appropriate under the circumstances and that the district court's instructions regarding the jury's duty to follow the law as given to it by the court were absolutely correct.

**Factual Summary**

After discussing the nature of the case and many of the fundamental principles of criminal law--the presumption of innocence, the jury's duty to consider only the evidence admitted and the government's burden of proof--with the entire jury panel, the district court directed its questions to a prospective juror named John S. Cowan, an attorney and solo practitioner. In response to the district court's inquiry, Cowan explained the nature of his civil and criminal practice. The district court then posited the following question: [C]ould we agree

on this, although you're an experienced trial lawyer, when it comes time for me to give the instructions in the case and I instruct the jury, you're ready to accept my view of the law as given in the instructions, even though, if it should, may conflict with your view?" Cowan responded "Yes." (Rec. vol. 3, 35). The following is an excerpt of the voir dire of prospective juror Altonin that immediately followed:

THE COURT:     Okay.  Are any others of you lawyers?  Mr. Altonin?

MR. ALTONIN:   Yes.  I taught criminal law at D.U. about 25 times.  I'm not a lawyer--

THE COURT:     But you've taught law?

MR. ALTONIN:   Yes.

THE COURT:     And are you teaching now?

MR. ALTONIN:   No, I'm a professor emeritus for D.U.

THE COURT:     And when was it that you taught criminal law?

MR. ALTONIN:   From 1966 until I think 1987.

THE COURT:     So when you say 25 times, you mean 25 periods, academic periods?

MR. ALTONIN:   Sometimes I taught more than once a year.

THE COURT:     Yeah.  And includes a procedure course?

MR. ALTONIN:   No, I did not teach procedure.

THE COURT: Would you be--were you teaching common law, criminal law?

MR. ALTONIN: We relied heavily on codes.

THE COURT: And particularly Colorado?

MR. ALTONIN: No.

THE COURT: Federal?

MR. ALTONIN: Largely, the model penal code.

THE COURT: Okay, Well, I'll have to ask you the same question I asked our practicing attorney, whether you're willing to accept the law from me as I give it in instructions?

MR. ALTONIN: I don't know.

THE COURT: And why do you say that?

MR. ALTONIN: Something may come up that I'd feel very strongly about.

THE COURT: Like what?

MR. ALTONIN: I can't imagine now.

THE COURT: Well, you know it's your duty--

MR. ALTONIN: My inclination is to follow the judge's instructions.

THE COURT: Which of course is what the duty of a juror is.

MR. ALTONIN:    Yes.  I've got one qualm there.

THE COURT:      Which is?

MR. ALTONIN:    That a jury always has the power to acquit.

THE COURT:      Well, that's right.

MR. ALTONIN:    Not withstanding the evidence.

THE COURT:      Well, the jury, in your view, can take the law unto itself?

MR. ALTONIN:    Yes, for the purpose of acquittal in a criminal case.

THE COURT:      I'm going to excuse you.  You're excused.

(Rec. vol. 3, 35-37).

Neither the defendant nor the Government lodged any objection of any kind regarding the dismissal of prospective juror Altonin.  The district court then provided the following explanation for removing Mr. Altonin as a prospective juror:

> Now, we were on the subject of experience with the law.  I just excused the professor because he expressed a view that the jury can disregard the law.  I'm surprised to hear that's being taught, if it is being taught.  But at any rate, that's not the law.  As I have explained patiently and carefully, the jury has to accept the law as it is, and it's up to the jury to decide on the evidence, you know, whether the evidence meets this high standard of proof, and can certainly decide on an acquittal, as he said, if the evidence doesn't persuade or convince you beyond a reasonable doubt.  But the jury can't make up the law, and that's the little exchange that we had there, and I'm sure you followed along with that, but I wanted to make it plain why it was that I excused this teacher.

(Rec. vol. 3, 38).  No objection to this explanation for striking Altonin and these instructions regarding the jury's obligation to follow the law was advanced by either party.

**Standard of Review**

"It is well settled that the district court has broad discretion in determining how to handle allegations of juror bias."  *United States v. Bornfield*, 145 F.3d 1123, 1132 (10th Cir. 1998), *cert. denied*, 2000 WL 48814 (2000).  "'The trial judge is vested with a wide discretion for determining the competency of jurors and his judgment will not be interfered with except in the case of an abuse of discretion.'"  *United States v. Contreras*, 108 F.3d 1255, 1265 (10th Cir.) (quoting *United States v. Porth*, 426 F.2d 519, 523 (10th Cir.) (internal quotation marks omitted), *cert. denied*,  400 U.S. 824, 91 S. Ct. 47, 27 L. Ed. 2d 53 (1970)), *cert. denied*, 522 U.S. 839.  *See United States v. Torres,* 128 F.3d 38, 42 (1st Cir. 1997) (trial judge has the authority and responsibility, either sua sponte or upon counsel's motion, to dismiss prospective jurors for cause), *cert. denied*, 523 U.S. 1065 (1998).

Because James did not object to the district court's sua sponte removal of prospective juror Altonin or to the district court's instructions to the jury, we review for plain error.  *See United States v. Hughes*, 191 F.3d 1317, 1322

(10th Cir. 1999). To establish plain error, James "'must show: (1) an error, (2) that it is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights.'" *Id.* (quoting *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir. 1999)).

## Juror Qualifications

A criminal defendant is guaranteed a trial "by an impartial jury." U.S. Const. amend. VI. "One touchstone of a fair trial is an impartial trier of fact--'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips,* 455 U.S. 209, 217 (1982)). A juror should be excused for cause if a particular belief will "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424 (1985). *See United States v. Simmons*, 961 F.2d 183, 184 (11th Cir. 1992) ("The constitutional standard for juror impartiality is whether the juror 'can lay aside his opinion and render a verdict based on the evidence presented in court.'") (quoting *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12 (1984)), *cert. denied*, 507 U.S. 989 (1993).

A defendant's right to an impartial jury does not include a right to a jury composed of persons who will disregard the district court's instructions. "[T]here

is no right to jury nullification." *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (citing *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (stating that "the power of juries to 'nullify' or exercise a power of lenity is just that--a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent") and *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (defendants not entitled to jury nullification instructions)).

> To the extent the defendant's appeal seeks to require courts to facilitate jury nullification, the law is clear: a criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law. *See United States v. Grismore,* 546 F.2d 844, 849 (10th Cir. 1976). The jury's role is to apply the law to the facts of the case.

*United States v. Rith*, 164 F.3d 1323, 1337 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 78 (1999). *Cf. United States v. Mason,* 85 F.3d 471, 473 (10th Cir. 1996) ("While we recognize that a jury in a criminal case has the practical power to render a verdict at odds with the evidence or the law, a jury does not have the lawful power to reject stipulated facts. Such a power, if exercised, would conflict with the jurors' sworn duty to apply the law to the facts, regardless of outcome.").

**Analysis**

In light of his responses to questions during voir dire, the district

court did not abuse its discretion or commit plain error in sua sponte dismissing prospective juror Altonin. A person who is either unwilling or unable to follow the court's instructions is not qualified to be a juror. Nor did the district court commit any error when it informed the jurors that it is their obligation to follow the law as it instructs. In short, the defendant was not deprived of his right to a fair trial.

## II. Challenges to Sentencing

The defendant contends that the district court erroneously denied his request for a two level "downward departure" for acceptance of responsibility under U.S.S.G. § 3E1.1. The defendant contends that he only went to trial to preserve his *Singleton*[2] argument, that he has expressed remorse for his crimes and has in fact accepted responsibility. The defendant notes that he provided information to the government and met the requirements of the "safety valve" provision, 18 U.S.C. § 3553(f) yet did not receive a two level reduction for

---

[2] *See United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998) (prosecuting attorney violated 18 U.S.C. § 201(c)(2) when he offered leniency to a co-defendant in exchange for truthful testimony), *vacated pending rehearing en banc,* 144 F.3d 1361 (10th Cir. 1998), *on rehearing en banc, United States v. Singleton*, 165 F.3d 1297, 1298 (10th Cir. 1999) ("We now hold 18 U.S.C. § 201(c)(2) does not apply to the United States or an Assistant United States Attorney functioning within the official scope of the office."), *cert. denied,* --- U.S. ----, 119 S. Ct. 2371 (1999).

acceptance of responsibility, implying that there is no rational explanation for this result. The defendant also contends that the denial of his request for the two level "departure" is effectively a punishment for exercising his Sixth Amendment right to trial by jury. Finally, the defendant contends that the district court denied his request for allocution on the issue of acceptance of responsibility and that such an error requires remand for resentencing.

The government responds to each of the defendant's allegations, arguing that the defendant was not entitled to a reduction in his sentence for acceptance of responsibility, that the denial of acceptance of responsibility is not a punishment, that the defendant's qualification for the safety valve provision did not automatically entitle him to the two level reduction for acceptance of responsibility, and that the defendant was in fact afforded the opportunity to speak to the court prior to the imposition of sentence.

### Two Level Downward Adjustment

Although the defendant's brief framed this issue in terms of the district court's denial of his request for a "downward departure" for acceptance of responsibility, using the nomenclature of the sentencing guidelines, the defendant was in reality seeking a two level downward adjustment in his base offense level for his acceptance of responsibility, not a downward departure from the sentencing

-11-

guidelines. Although a district court may downwardly depart from the applicable guideline range if the defendant demonstrates remorse to an exceptional degree, *see United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998) ("[R]emorse is a factor taken into account by the Sentencing Guidelines under acceptance of responsibility. If a factor is already taken into account by the Sentencing Guidelines, it is a permissible factor for departure if it is present to some exceptional degree. (Citations omitted). Because remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree."), the defendant in this case simply argues that the district court should have granted him a two point reduction in his base offense level for acceptance of responsibility under § 3E1.1. *See United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999) ("If 'the defendant clearly demonstrates acceptance of responsibility for his offense,' *the district court grants a two offense-level downward adjustment.*") (quoting U.S.S.G. § 3E1.1(a)) (emphasis added), *cert. denied*, 120 S. Ct. 250 (1999). Consequently, and as the defendant's counsel conceded during oral argument, the issue on appeal is not whether the district court committed reversible error in denying the defendant's request for a "downward departure, but instead whether the district court erroneously denied the

defendant's request for a downward adjustment of two levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

## Standard of Review

"Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard." *Gauvin*, 173 F.3d at 805 (citing *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997), *cert denied,* 522 U.S. 1063, (1998)). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 5.

## Acceptance of Responsibility

"The defendant bears the burden of establishing entitlement to a reduction under § 3E1.1." *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998) (citing *United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir. 1995)), *cert. denied,* 119 S. Ct. 1086 (1999). "To receive a reduction, the defendant must show 'recognition and affirmative acceptance of personal responsibility for his criminal conduct.' *United States v. McAlpine*, 32 F.3d 484, 489 (10th Cir.) (quoting U.S.S.G. § 3E1.1(a)), *cert. denied*, 513 U.S. 1031 (1994). A "defendant who falsely denies, or frivolously contests, relevant conduct that the court

-13-

determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, Application Note 1(a).

The Sentencing Commission recognizes that the acceptance of responsibility guideline is "not intended to apply to a defendant that puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, Application Note 2. The commentary to § 3E1.1 continues, stating that "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.... [A] determination that a defendant [who exercised his constitutional right to a trial] has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id. See Gauvin*, 173 F.3d at 805; *United States v. Moudy*, 132 F.3d 618, 621 (10th Cir.), *cert. denied,* 523 U.S. 1036 (1998); *United States v. Allen*, 129 F.3d 1159, 1166-67 (10th Cir. 1997).

"In 'rare situations' a defendant may deserve the reduction for acceptance of responsibility even though he goes to trial." *United States v. Portillo-Valenzuela*, 20 F.3d 393, 394 (10th Cir.), *cert. denied*, 513 U.S. 886 (1994). As an example of an exception to the general rule against receiving a downward adjustment for acceptance of responsibility following conviction by

-14-

trial, "this may occur...where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute of his conduct)." U.S.S.G. § 3E1.1, Application Note 2. As another example, "the entrapment defense is one of those 'rare situations' contemplated by the Sentencing Guidelines in which a defendant may go to trial and still receive an acceptance of responsibility reduction." *United States v. Garcia*, 182 F.3d 1165, 1173 (10th Cir. 1999) ("We hold only that raising the entrapment defense does not necessarily foreclose the possibility of receiving a reduction for acceptance of responsibility, but that does not mean that the simple assertion of the entrapment defense coupled with acknowledgment of the underlying criminal activity automatically entitles a defendant to a two-point acceptance of responsibility reduction."). Similarly, a defendant who proceeds to trial only to contest the legal element of intent may still, in rare instances receive, a reduction for acceptance of responsibility. *Gauvin*, 173 F.3d at 806. In contrast, "[p]leading not guilty and requiring the government to prove guilt at trial demonstrate[s] denial of responsibility, regardless of how easily the government can prove guilt." *Portillo-Valenzuela*, 20 F.3d at 394-95. "A defendant is not entitled to an adjustment for acceptance of responsibility merely because he admits to wrongdoing." *United States v.*

*McMahon*, 91 F.3d 1394, 1397 (10th Cir.), *cert. denied*, 120 S. Ct. 535 (1999).

**Singleton**

Prior to trial, the defendant filed a motion to stay the trial pending final resolution of the *Singleton* case by the Tenth Circuit. That motion was denied by the district court as it believed that its own prior decision in *United States v. Dunlap*, 17 F. Supp. 2d 1183 (D. Colo. 1998) (agreements by government with cooperating witnesses does not violate the anti-gratuity statute) correctly stated the law. During trial the defendant renewed his *Singleton* motion, arguing that permitting the prosecution to introduce the testimony of witnesses cooperating with the government in exchange for the potential of a reduced sentence or other benefits would constitute a violation of 18 U.S.C. § 201.

Prior to sentencing, James expressed remorse for his crimes, took responsibility for his acts and informed the district court that he had gone to trial for the purposes of creating and preserving his record on the *Singleton* issue. The district court rejected the defendant's request for a downward adjustment for acceptance of responsibility.

James' contention that he proceeded to trial solely to preserve his *Singleton* challenge is belied by the fact he denied guilt at trial, put the government to the burden of proving the crimes charged, challenged the evidence

offered and presented a defense suggesting that he was involved in illicit gambling, not drug trafficking, and that the recorded conversations received into evidence were not related to drug deals but instead to gambling transactions.

The district court's conclusion that the defendant in this case did not go to trial solely to preserve his *Singleton* challenge and that he is not entitled to a two level adjustment for acceptance of responsibility is not clearly erroneous. The defendant formally denied factual guilt by pleading not guilty, forcing the government to prove his factual guilt at trial. The defendant's pleas and insistence on proceeding to trial "brought into question whether he manifested a true remorse for his criminal conduct." *United States v. Ochoa-Fabian*, 935 F.2d 1139, 1143 (10th Cir. 1991), *cert. denied*, 503 U.S. 961 (1992). Contrary to the defendant's argument in his reply brief, nothing precluded him from seeking to enter conditional pleas to preserve his *Singleton* challenge. In any event, the district court was in a much better position to evaluate the defendant's purported reasons for going to trial. The district court's denial of the defendant's request for an adjustment for acceptance of responsibility was not clearly erroneous.

***Unconstitutional Penalty***

The defendant's contention that the denial of his request for a two level reduction for acceptance of responsibility is an unconstitutional penalty for

exercising his constitutional right to proceed to trial is an argument that has been

repeatedly rejected by the Tenth Circuit:

> [The defendant] also argues that the Constitution prevents the court from penalizing him for his exercise of the right to trial.  However, denying the reduction for acceptance of responsibility is not a penalty for exercising any rights.  The reduction is simply a reward for those who take full responsibility.  Therefore the court may constitutionally deny the reduction if the defendant's exercise of a constitutional right is inconsistent with acceptance of responsibility.  *See United States v. Gordon*, 4 F.3d 1567, 1573 (10th Cir. 1993) (holding that denying reduction for acceptance of responsibility is not an unconstitutional penalty for exercising Fifth Amendment rights); *United States v. Jones*, 997 F.2d 1475, 1477 (D.C. Cir. 1993) (explaining that withholding leniency does not penalize defendant for exercising right to trial), *cert. denied*, 510 U.S. 1065, 114 S. Ct. 741, 126 L. Ed. 2d 704 (1994);  *United States v. Rogers*, 921 F.2d 975, 982-83 (10th Cir.) (stating that denying downward adjustment does not penalize exercise of Fifth Amendment rights), *cert. denied*,  498 U.S. 839, 111 S. Ct. 113, 112 L. Ed. 2d 83 (1990); *cf. Corbitt v. New Jersey*, 439 U.S. 212, 223, 99 S. Ct. 492, 499, 58 L. Ed. 2d 466 (1978) (holding that state may constitutionally reduce sentences for those who plead guilty).

*Portillo-Valenzuela,*  20 F.3d at 395.

### The Safety Valve Provision

The "safety valve" provision, 18 U.S.C. § 3553(f), provides:

Limitation on applicability of statutory minimums in certain cases.-- Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act ( 21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been

afforded the opportunity to make a recommendation, that--

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*U.S.S.G.* § 5C1.2 adopts verbatim 18 U.S.C. § 3553(f).

Section 3553(f) was enacted as a "safety valve" to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences. As the legislative history of the section states, without such a safety valve, for "the very offenders who most warrant proportionally lower sentences--offenders that by guideline definitions are the least culpable--mandatory minimums generally operate to block the sentence from reflecting mitigating factors." H.R.Rep. No. 103-460, 103d Cong., 2d Sess., 1994 WL 107571 (1994). This would have the unfortunate effect that the "least culpable offenders may receive the

same sentences as their relatively more culpable counterparts." *Id.*

*United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995).

"To override a mandatory minimum sentence, a defendant must prove that he meets all five requirements of the safety valve provision." *United States v. Gonzalez-Montoya*, 161 F.3d 643, 651 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 1284 (1999). *See United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996) ("Although we have not previously ruled in this circuit on the burden as applied to U.S.S.G. § 5C1.2, we now follow the reasoning set out by other circuits and hold that the defendant has the burden of proving, by a preponderance of the evidence, the applicability of this section."). In regard to the fifth requirement of the safety valve provision, the Tenth Circuit has held that § 3553(f)(5) requires a defendant to tell the government all that he knows about the offense of conviction and the relevant conduct, including the identities and participation of others in order to qualify for relief from the statutory mandatory minimum sentence. *Acosta-Olivas*, 71 F.3d at 377.

"[T]he safety valve provision and acceptance of responsibility under *U.S.S.G.* 3E1.1(a) are not coterminous." *Gonzalez-Montoya*, 161 F.3d at 652. "Conviction by a jury does not foreclose relief under the safety valve provision." *Id.* (citation omitted). Conversely, the commentary to § 3E1.1 makes clear that a

defendant who "puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse" is not entitled to a two level reduction for acceptance of responsibility. Consequently, the district court's finding that the defendant qualified for the safety valve provision did not automatically entitle him to a downward adjustment for acceptance of responsibility.

### *Allocution*

The defendant contends that the district court treated his request for a two level departure as a purely legal question and denied his request to address the court with regard to that issue during sentencing. The defendant contends that this ruling violated Fed. R. Crim. P. 32(a)(1)(C) and his right of allocution. The government responds, arguing that the defendant's counsel was provided an opportunity to object to the PSIR and that the district court did not impose sentence until ruling on those objections. In any event, the government contends that the court actually provided the defendant with an opportunity to address the court prior to imposing sentence.

"[B]efore imposing sentence the court must 'address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence.'" *United States v. Archer*,

70 F.3d 1149, 1151 (10th Cir. 1995) (quoting Fed. R. Crim. P. 32(a)(1)(C)). "The right to allocution is an integral part of the sentencing process which if not fully afforded to the defendant requires a reversal of the sentence imposed." *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir.) (*citing Green v. United States*, 365 U.S. 301, 304 (1961)), *cert. denied,* 510 U.S. 1002 (1993).

We have reviewed the transcript of the sentencing hearing and are satisfied that the defendant was specifically afforded an opportunity to address the district court prior to imposition of sentence. In fact, prior to the pronouncement of sentence the defendant personally addressed the district court and offered these comments regarding his reasons for going to trial and why he should be entitled to a downward adjustment of two levels for acceptance of responsibility:

> And the only reason I did go to trial was to preserve my issues on *Singleton* and to keep them on record, Your Honor. I never tried to shirk the responsibility. I never tried to run. When the police came to get me, we came peacefully. There was no problem, waived extradition to get back to take care of this, Your Honor.

(Rec. vol. 5, 13).

### Conclusion

The district court did not err in sua sponte striking prospective juror Altonin, nor did it err by informing the jurors that they are required to follow the law as it instructs. The district court did not err in refusing to grant the

-22-

defendant's request for a two-point reduction in his base offense level for acceptance of responsibility, nor did it deny the defendant his right of allocution..

AFFIRMED.

Entered for the Court

Sam A. Crow
District Judge