**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD SCOTT WOOD,

    Defendant - Appellant.

No. 03-3302
(D.C. No. 02-CR-10030-JTM)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **EBEL** and **TYMKOVICH**, Circuit Judges, and **HEATON**,[**] District Judge.

    Defendant Richard Wood was convicted of twenty-seven counts of bank fraud in violation of 18 U.S.C. § 1344(2), one count of engaging in a prohibited monetary transaction in criminally derived property (money laundering) in violation of 18 U.S.C. § 1957, fifteen counts of wire fraud in violation of 18

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Joe Heaton, United States District Court Judge, Western District of Oklahoma, sitting by designation.

U.S.C. § 1343, and three counts of interstate transportation of stolen money in violation of 18 U.S.C. § 2314. He now challenges the validity of his bank fraud and money laundering convictions. He also argues that he should not have received a one-level sentence enhancement under USSG § 2S1.1(b)(2)(A) based on his § 1957 conviction, and that he ought to have been given an offense level reduction under USSG §3E1.1 for acceptance of responsibility. We AFFIRM.

## BACKGROUND

Defendant provided financial advice and other financial services to customers of Boeing Wichita Credit Union pursuant to an agreement with the credit union. (Aplt. App. vol II at 286.) Although Defendant was an independent contractor, not a credit union employee, several employees of the credit union testified that they viewed him as an authority figure there. (Id. at 205, 233, 261.)

In January 2001, after having made a string of bad personal investments, Defendant began transferring money out of the accounts of credit union members and into accounts that he controlled. (Id. at 295-99, Aplt. Br. at 4.) Needless to say, these transactions had not been authorized by the account holders. In total, Defendant took approximately $3.6 million from credit union members' accounts without permission in 2001. (Aplt. App. vol. II at 319-20.)

Defendant's plan was essentially to invest the credit union members' money into high risk ventures without their knowledge, and to pocket the proceeds. (Id. at 303.) Those investments did not pan out quite as Defendant might have hoped. The record indicates that he ran up about $1.5 million in trading losses and squandered an additional $250,000 to $300,000 in trading fees. (Id. at 130.) He also used some of the credit union members' money to purchase a car and complete various home improvement projects. (Id. at 347.)

Defendant's method of obtaining access to the credit union members' funds was not elaborate. He simply gave credit union member service representatives notes instructing them to transfer those funds into his account. Defendant has acknowledged that he led the member service representatives to believe that those transactions had been approved by the account holders. (Id. at 315, 351.) Furthermore, member service representatives testified that Defendant expressly misrepresented to them that the transactions had been requested by the customer.[1]

---

[1] Ronnie Finneran, a member service representative, testified that when Defendant directed her to transfer the funds he would say "'I need you to transfer this money from the member's account to this ... account. The member wants me to invest it.' Or, if it was an IRA, he said that ... [the] member wanted the money transferred to another IRA and he was handling it." (Aplt. App. vol. II at 205-06.) Likewise, Marcy Hoffman, another member service representative, testified that when Defendant directed her to transfer the funds "[s]ometimes he would just say, 'I met with the member. I talked to the member,' something like that, and said '[w]e're going to put this in this account.'" (Id. at 263.)

Defendant's activities finally came to light in December 2001, when a credit union member called to complain that her balance statement did not appear to be correct. (Id. at 121.) He was ultimately charged with numerous counts of bank fraud, money laundering, wire fraud and interstate transportation of stolen money, as listed above. He pled not guilty and was convicted on all counts.

The district court sentenced Defendant under USSG § 2S1.1. (Aplt. App. vol. III at 388.) His base offense level was twenty-two. He received a one-level enhancement pursuant to USSG § 2S1.1(b)(2)(A) because he had been convicted under 18 U.S.C. § 1957, and a two-level enhancement pursuant to USSG § 3B1.3 for abusing a position of trust, thus bringing his total offense level to twenty-five. The court also refused to grant Defendant an offense level reduction for acceptance of responsibility pursuant to USSG § 3E1.1. Defendant was sentenced to fifty-seven months' imprisonment and ordered to pay restitution.

**DISCUSSION**

Defendant raises four issues on appeal. He contends: (1) that his bank fraud convictions under 18 U.S.C. § 1344(2) should be overturned because he made no false representations; (2) that his money laundering conviction under 18 U.S.C. § 1957 should be overturned because he lacked an intent to conceal or, alternatively, because he was not engaged in organized crime and/or large scale

drug trafficking; (3) that the one-level enhancement under § 2S1.1(b)(2)(A) was improper; and (4) that he should have received an offense level reduction for acceptance of responsibility. We hold that all of these arguments are meritless.

A. Bank Fraud Convictions (18 U.S.C. § 1344(2))

The elements of bank fraud under 18 U.S.C. § 1344 are (1) that the defendant knowingly executed or attempted to execute a scheme (i) to defraud or (ii) to obtain property by means of false or fraudulent pretenses, representations or promises; (2) that he or she did so with the intent to defraud a financial institution; and (3) that the financial institution was then federally insured. See United States v. Akers, 215 F.3d 1089, 1100 (10th Cir. 2000); see also United States v. Swanson, 360 F.3d 1155, 1161 (10th Cir. 2004). "A person violates the bank fraud statute when he knowingly executes a scheme to obtain money from a financial institution by means of material, fraudulent representations." Akers, 215 F.3d at 1101.[2]

---

[2] 18 U.S.C. § 1344 prohibits "knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." We have held that §§ 1344(1) and 1344(2) are distinct, albeit related, offenses. See United States v. Young, 952 F.2d 1252, 1256 (10th Cir. 1991).

Defendant challenges his bank fraud convictions solely based on his contention that the evidence at trial did not show that he used any false pretenses, representations, or promises in obtaining funds from the credit union members' accounts. (Aplt. Br. at 12.) We review a challenge to the sufficiency of the evidence de novo, presuming that the jury resolved all evidentiary conflicts and drew all reasonable inferences in the light most favorable to the prosecution. United States v. Roberts, 185 F.3d 1125, 1140 (10th Cir. 1999).

Contrary to Defendant's assertion, there is ample evidence in the record demonstrating that Defendant made misrepresentations and used false pretenses to obtain the funds in question. First, member service representatives testified that Defendant expressly told credit union employees that account holders had requested the transfers. Those statements were false. Further, Defendant acted in his capacity as financial advisor for credit union members, thus putting on the false pretense that he was acting on those members' behalf. See United States v. Briggs, 965 F.2d 10, 11-12 (5th Cir. 1992) (false pretenses can include falsely holding oneself out to have authority to make monetary transfers, even in the absence of overt false statements or promises).

We AFFIRM Defendant's convictions under 18 U.S.C. § 1344(2).

B.  Money Laundering Conviction (18 U.S.C. § 1957)

18 U.S.C. § 1957(a) prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and ... derived from specified unlawful activity."[3]  We have referred to this statute and 18 U.S.C. § 1956 in tandem as "money laundering" statutes. See, e.g., United States v. Bailey, 327 F.3d 1131, 1137 (10th Cir. 2003); United States v. Pretty, 98 F.3d 1213, 1219 (10th Cir. 1996).[4]

Defendant admits that "his conduct falls within the wording of the statute." (Aplt. Br. at 10.)  Nevertheless, he argues that two additional unwritten elements of the statute were not satisfied.  He contends that § 1957 requires (1) "an intent to conceal, to hide or to somehow purposefully make stolen money appear to be 'clean,'" or, in the alternative, (2) that the case involves "organized crime and/or large scale drug trafficking."  (Id.)  As is apparent from its plain language, § 1957 demands no such thing.[5]

_____

[3]  Bank fraud is a "specified unlawful activity" for purposes of this statute. See 18 U.S.C. §§ 1956(c)(7)(A), 1957(f)(3), 1961(1); 31 U.S.C. § 5311 et seq.

[4]  Section 1956 prohibits transactions in the proceeds of specified unlawful activity (1) with the intent to promote the carrying on of specified unlawful activity or the intent to violate certain provisions of the Internal Revenue Code, or (2) knowing that the transaction is designed (i) to conceal or disguise the nature, location, source, ownership, or the control of the proceeds, or (ii) to avoid certain reporting requirements.  See 18 U.S.C. § 1956(a)(1).

[5]  After all the evidence was presented at trial, Defendant moved for a judgment of acquittal, arguing that his bank fraud convictions were not supported

We have already explained that the "argument that section 1957 requires an intent to conceal is ... without merit." United States v. Allen, 129 F.3d 1159, 1165 (10th Cir. 1997). "Section 1957 ... prohibits engaging in monetary transactions in property from specified unlawful activity, and contains no requirement that the transaction be designed to conceal anything. A defendant must know only that she is engaging in a transaction and that the subject of the transaction is criminally derived property." Id. at 1165; see also United States v. Wynn, 61 F.3d 921, 926-27 (D.C. Cir. 1995).

Defendant's second argument fares no better. Nothing in the language of § 1957 limits the reach of that statute to drug offenses or organized crime. To the contrary, that statute specifically states that it applies to a list of certain "specified unlawful activit[ies]," many of which have nothing to do with drugs or organized crime. See 18 U.S.C. §§ 1956(c)(7)(A), 1957(a)(1), 1957(f)(3), 1961(1). It is therefore clear that "money laundering is not limited only to

---

by evidence of a material misrepresentation. (Aplt. App. vol. II at 359-60.) He did not raise the challenges to the money laundering charge that he now asserts on appeal. When a motion for judgment of acquittal is made on specific grounds, all grounds not specified are waived and may be reviewed only for plain error. United States v. Kimler, 335 F.3d 1132, 1141 (10th Cir.), cert. denied, 125 S. Ct. 945 (2003).

    Accordingly, we may reverse Defendant's money laundering conviction only if (1) the district court committed error, (2) the error is plain, (3) the error affected the defendant's substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id. For the reasons discussed below, we hold that the district court committed no error.

proceeds of serious crimes like drug trafficking and organized crime." <u>United States v. Thorn</u>, 317 F.3d 107, 128 (2d Cir. 2003). Although the money laundering statutes may have been largely designed to target drug-related activities, they are certainly not limited to that context. <u>See</u> <u>United States v. Johnson</u>, 971 F.2d 562, 568-69 (10th Cir. 1992) (noting that sections 1956 and 1957 "prohibit[] a much broader range of conduct than just the 'classic' example of money laundering.").

We AFFIRM Defendant's conviction under 18 U.S.C. § 1957.

### C. Section 2S1.1(b)(2)(A)'s Offense Level Enhancement

The district court increased Defendant's offense level by one level under USSG § 2S1.1(b)(2)(A). That guideline reads, in full: "If the defendant was convicted under 18 U.S.C. § 1957, increase by 1 level." U.S. Sentencing Guidelines Manual § 2S1.1(b)(2)(A) (2002). Defendant was undeniably convicted under 18 U.S.C. § 1957, and, for the reasons discussed above, that conviction was supported by the evidence at trial. The one-level enhancement was appropriate.

### D. Acceptance of Responsibility

Finally, Defendant argues that he should have received an offense level reduction for acceptance of responsibility under USSG § 3E1.1. The defendant

has the burden of clearly demonstrating that he accepted responsibility for his offenses, and this is a question of fact we review only for clear error. See U.S. Sentencing Guidelines Manual § 3E1.1(a) (2002); Bailey, 327 F.3d at 1148; United States v. Saffo, 227 F.3d 1260, 1271-72 (10th Cir. 2000). "'The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason the determination of the sentencing judge is entitled to great deference on review.'" Saffo, 227 F.3d at 1271 (quoting U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.5).

The acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.2 (2002). "[A]dmission of the factual elements of guilt is certainly essential to a finding that a defendant accepted responsibility for his crime." United States v. Salazar-Samaniega, 361 F.3d 1271, 1280 (10th Cir.), cert. denied, 125 S. Ct. 180 (2004).

At trial, Defendant contested the factual basis of his bank fraud claims, contending that he never made any misrepresentations and never used false pretenses to obtain credit union members' funds. He continues to make that same argument on appeal. See supra Part A. This is enough to defeat his argument that the district court erred in refusing to reduce his offense level under § 3E1.1.

E.  Conclusion

For the foregoing reasons, we reject Defendant's challenges to his convictions and sentence.  We AFFIRM in all respects.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge